UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-0613 (RBW) |
| | ) | |
| QUICKEN LOANS INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**UNITED STATES' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
<u>QUICKEN LOANS INC.'S MOTION TO STAY OR TRANSFER</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. I

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

    I.    QUICKEN IS A NATIONAL LENDER WITH OFFICES AROUND THE UNITED STATES AND REGULAR CONTACTS WITH THIS DISTRICT. ........... 2

    II.    FHA AND HUD STAFF IN THE DISTRICT OF COLUMBIA PLAY INTEGRAL ROLES IN THE DAY-TO-DAY OPERATIONS OF THE FHA INSURANCE PROGRAM. ........................................................................................ 3

    III.    QUICKEN COMMENCED ITS PREEMPTIVE SUIT KNOWING THE UNITED STATES WAS ON THE VERGE OF FILING THIS ACTION IN THIS COURT. ...................................................................................................... 5

ARGUMENT ................................................................................................................... 7

    I.    THIS SUIT HAS A STRONG CONNECTION TO THIS DISTRICT AND QUICKEN OFFERS NO REASON TO DISTURB PLAINTIFF'S CHOICE OF FORUM. ....................................................................................................... 7

        A.    First Private Interest Factor:  The United States' Choice of Forum is Entitled to Deference Because the Forum Has a Strong Connection to This Case ....................................................................................................... 10

        B.    Second Private Interest Factor: Quicken's Preferred Forum Will Inconvenience Witnesses in this District Relevant to This Case. ................... 15

        C.    Third Private Interest Factor:  The Facts Underlying This Matter Occurred Throughout the Nation But Quicken's Fraud on the Government Was Directed to Officials in the District of Columbia. ............. 16

        D.    Fourth and Fifth Private Interest Factors: The District of Columbia is a Convenient Forum for the Parties and Witnesses. .......................................... 17

        E.    Sixth Private Interest Factor: Quicken's Documents Are Electronic and the District is Otherwise a Convenient Forum ................................................ 21

        F.    Public Factors Favor Keeping This Case in the District of Columbia ........... 22

    II.    QUICKEN'S LAWSUIT FALLS INTO THE CATEGORY OF "PREEMPTIVE-STRIKE" LAWSUITS THAT DO NOT WARRANT APPLICATION OF A "FIRST-TO-FILE" RULE. .................................................... 24

A.    The First-To-File Rule Does Not Apply When the First-Filed Suit Is
Merely a Preemptive Strike. .......................................................................... 25

B.    All Relevant Equitable Considerations Factor Against Affording
Deference to Quicken's Preemptive-Strike Suit. ............................................ 28

CONCLUSION ..................................................................................................................... 34

By and through its undersigned counsel, the United States of America ("United States" or "Government") respectfully submits this response to the Court's Order to Show Cause of May 4, 2015, and opposition to Quicken Loans Inc.'s ("Quicken's") motion to stay or transfer (R.4) ("Motion"). For the reasons set forth herein, Quicken's Motion lacks merit and the Court should neither stay nor transfer this action.

## PRELIMINARY STATEMENT

The United States, in filing this suit in the United States District Court for the District of Columbia, made a reasoned choice of forum based on Quicken's actions at issue and the burden to potential witnesses. This suit alleges a nationwide scheme in which Quicken caused hundreds of false claims to be submitted to and processed by a federal agency in this district. This district is a convenient forum because, as past experience in similar cases has shown, while witnesses will hail from across the country, a very large number of potential witnesses are located in or near this district. Prior litigation confirms the Government's expectation that an overwhelming number of Government witnesses will be from the D.C. area. In light of the substantial connection this case has to this district, the plaintiff's choice of forum is afforded strong deference as a matter of law. None of Quicken's arguments satisfy its significant burden to overcome the deference due to the United States' choice of a forum with substantial connections to this case.

The deference due to the United States' choice of forum is not diminished by the fact that just before this suit was filed, Quicken filed a complaint in the U.S. District Court for the Eastern District of Michigan ("EDMI") asking that court to issue "declaratory" relief under the Administrative Procedure Act, the Declaratory Judgments Act, the Constitution, and FHA insurance contracts, and to find that the Government's ongoing investigation of Quicken was unfounded and that Quicken never made a materially false statement to FHA (the "Preemptive

Suit").  That legally flawed suit for a declaratory statement about the Government's investigation was filed hours after undersigned counsel for the United States, including counsel from the U.S. Attorney's Office for this District, told Quicken's founder, senior executives, and counsel that it would file this False Claims Act ("FCA") in a matter of days.  Well-established law dictates that Quicken's "preemptive-strike" suit cannot serve as a predicate for invoking the "first-filed" rule. Indeed, that Preemptive Suit does nothing to support transfer of this action to Quicken's preferred venue, the EDMI.  At bottom, the Court should not reward Quicken's use of a preemptive lawsuit to attempt a procedural end run around the United States' legitimate choice for pursing this action.  Quicken's motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **QUICKEN IS A NATIONAL LENDER WITH OFFICES AROUND THE UNITED STATES AND REGULAR CONTACTS WITH THIS DISTRICT.**

Quicken is the largest Federal Housing Administration ("FHA") lender and second largest retail home lender.  Quicken Press Release re Preemptive Suit at 2, enclosed herewith as exhibit 1 ("Opp. Ex. 1").   Quicken originates and underwrites residential mortgage loans for properties in all 50 states and the District of Columbia.  *Id.*; Compl. at ¶ 26.  As a national lender, Quicken employees are "flung all across America!" and Quicken has "offices in many cities all across the states" including Detroit, Michigan, Cleveland, Ohio, Scottsdale, Arizona, San Diego, California, Denton, Texas, Pittsburgh, Pennsylvania, and Charlotte, North Carolina.   Quicken Website, Locations, http://www.quickenloanscareers.com/locations/ (last visited May 12, 2015).

As the largest FHA lender, Quicken has extensive contacts with the District of Columbia, including its officers' frequent business trips to the District and as a sponsor of one of the area's largest sports tournaments.  News Article re: Quicken National at Congressional Country Club, Opp. Ex. 2; News Articles re: Conferences & Congressional Testimony, Opp. Ex. 3.  Quicken's

job search website, www.quickenloanscareers.com, allows for applications to search for jobs in nine specific locations, including Bethesda, Maryland.   Quicken Website, Quicken Careers, https://careers-quickenloans.icims.com/jobs/intro?hashed=-435773334 (last visited May 12, 2015).   And, of particular relevance to this case, as a national lender and the largest FHA lender, Quicken predictably has regular contacts with FHA staff located in the District of Columbia. MacPherson Tr. at 91-93, 107-08, Opp. Ex. 4 (identifying HUD officials); Declaration of Tammie M. Parshall ("HUD Decl.") ¶¶ 18-24, Opp. Ex. 5 (locations of identified HUD officials).

## II.    FHA AND HUD STAFF IN THE DISTRICT OF COLUMBIA PLAY INTEGRAL ROLES IN THE DAY-TO-DAY OPERATIONS OF THE FHA INSURANCE PROGRAM.

FHA is a component of the U.S. Department of Housing and Urban Development ("HUD") that, in part, provides mortgage insurance against losses on mortgage loans to single family home buyers originated by approved lenders.   Compl. ¶ 36.   The single family FHA insurance program is headquartered and run out of FHA offices in the District of Columbia, where FHA currently employs 132 employees.   HUD Decl. ¶ 4-14, Opp. Ex. 5.   FHA also runs four regional Homeownership Centers in Philadelphia, Pennsylvania, Atlanta, Georgia, Denver, Colorado, and Santa Ana, California.   Open. Br. at 15; HUD Decl. ¶ 15, Opp. Ex. 5.   Each Homeownership Center is responsible for coordinating FHA activities on loans secured by properties falling within its respective region.   HUD Decl. ¶¶ 15-17, Opp. Ex. 5.   Consequently, nationwide lenders such as Quicken that originate loans in all 50 states and the District of Columbia are overseen by all four Homeownership Centers.   *Id.*   The Homeownership Centers' activities are directly overseen by, and follow FHA policies directed by, FHA staff in the District of Columbia.   HUD Decl. ¶ 17, Opp. Ex. 5.   Indeed, HUD maintains a robust staff of high-ranking and subordinate FHA officials in the District of Columbia that have direct day-to-day

involvement in single family programs, including the 132 employees referenced above.  HUD Decl. ¶¶ 4-14, Opp.  Ex. 5.

Quicken participates in FHA's Direct Endorsement Lender program and submitted an initial application as well as annual certifications of compliance with FHA program rules to HUD headquarters in the District of Columbia.  Compl. ¶¶ 21-22.[1]  Additionally, for each loan Quicken underwrites and approves for FHA insurance, Quicken certifies that Quicken complied with applicable program rules and underwriting guidelines and submits loan endorsement information to FHA through systems administered and managed by FHA staff in this District. Compl. ¶ 23; HUD Lender Insurance ("LI") Guide at 28-34, Opp. Ex. 10 (describing steps to submit FHA certifications for loans made by LI Lenders); CHUMS System of Records Notice at 1-2, Opp. Ex. 11 (system used for FHA endorsement and insurance administered by FHA staff in Washington, D.C.).  When a borrower defaults on an FHA insured loan, the claim is submitted to and processed by FHA using record systems administered by staff located in the District of Columbia.  Single Family Insurance System ("SFIS") - Claims Subsystem System of Records Notice at 1, 6, Opp. Ex. 12 (system used to process FHA insurance claims administered in Washington, D.C.).  Notably, none of the information systems used by FHA Single Family

---

[1]      Before September 2009, lenders mailed their annual certifications on a paper "V-Form" to HUD headquarters in the District of Columbia.  *See* Mortgagee Letter 2009-25, Opp. Ex. 6 (noting change from paper mail to online process); FHA Connection Lender Approval Guide of 7/2004 at 2, Opp. Ex. 7 (explaining prior process, directing lenders to "[s]ubmit the signed form to HUD Headquarters for annual recertification").  After September 2009, lenders submitted their annual certifications online to HUD headquarters in the District of Columbia through FHA Connection.  See Mortgagee Letter 2009-25, Opp. Ex. 6.  FHA Connection is managed and administered by FHA staff in the District of Columbia.  Lenders were later required to submit annual certifications to HUD headquarters through Lender Electronic Assessment Portal or "LEAP" after May 27, 2014.  Mortgagee Letter 2014-09, Opp. Ex. 8.  LEAP is managed and administered by FHA staff in the District of Columbia.  *See* LEAP System of Records Notice at 1, 6, Opp. Ex. 9.

Program staff are located in, or administered by personnel stationed in, the EDMI.  *See* HUD

Major Information Systems List, Opp. Ex. 13.

### III.    QUICKEN COMMENCED ITS PREEMPTIVE SUIT KNOWING THE UNITED STATES WAS ON THE VERGE OF FILING THIS ACTION IN THIS COURT.

On April 27, 2012, the Department of Justice, in conjunction with HUD, and the Office

of Inspector General for HUD, through issuance of HUD Inspector General subpoenas to

Quicken, began an investigation into Quicken's origination and underwriting of single family

residential mortgages insured by the FHA.  Declaration of Christopher Reimer ("Reimer Decl.")

¶ 6, Opp. Ex. 14.  That investigation resulted in the United States filing this action on April 23,

2015, against Quicken in this Court.  *See generally* Compl. at 1.

As part of the United States' investigation, the United States repeatedly reached out to

Quicken to obtain its view of the facts and, after forming its belief that Quicken was liable, to

explore the potential for a settlement.[2]  The first discussion in this regard took place on May 16,

2013, when the United States made clear that it intended to use sampling of loans for purposes of

its investigation.   Reimer Decl. ¶ 7, Opp. Ex. 14.   On June 24, 2013, HUD officials in

Washington, D.C. sent Quicken a letter that stated it "has ceased Post Endorsement Technical

Reviews and Quality Assurance Division reviews of self-reported loans endorsed prior to

January 1, 2012."  Letter from HUD to Quicken of 6/24/2013, Opp. Ex. 15.[3]

---

[2]     Notably, Quicken has repeatedly mischaracterized the contents of the parties' settlement discussions in its Preemptive Suit, in the current Motion, and in the press.  The United States intends to maintain the confidentiality of these settlement discussions, except to discuss the background facts and circumstances of those discussions, where necessary to provide this Court information about the chronology of events to show that Quicken filed its suit in EDMI shortly after learning it would be sued in this district.

[3]     In its Preemptive Suit, Quicken appears to challenge the decision of HUD officials in the District of Columbia to cease these reviews.  Preemptive Suit ¶¶ 70-72, enclosed with Quicken's motion as exhibit A ("Mot. Ex. A").

The United States' investigation progressed, and, on March 30, 2015, counsel for the United States informed Quicken they had authority to institute suit on behalf of the United States against Quicken under the FCA.  Reimer Decl. ¶ 9, Opp. Ex. 14.

In one last attempt to explore a negotiated resolution before filing an FCA suit, on April 17, 2015, in a telephone call with Quicken's counsel and Quicken senior executives, the United States informed Quicken that, if settlement discussions did not progress, the United States intended to file suit the following week.  Reimer Decl. ¶ 10, Opp. Ex. 14.  Assistant United States Attorney for the District of Columbia, Brian P. Hudak, was present for that call.[4]  Reimer Decl. ¶ 11, Opp. Ex. 14.

Within hours after that call, Quicken filed the lawsuit in the EDMI without any prior discussion with, or notice to, the United States.  Reimer Decl. ¶¶ 12, Opp. Ex. 14.  Quicken never formally rejected the United States' settlement proposal or informed the United States that Quicken would not engage in further settlement discussions before filing suit.  Reimer Decl. ¶¶ 13, Opp. Ex. 14.  As settlement discussions did not progress, the United States did what it told Quicken it would do, and filed suit on April 23, 2015, in this District.  *See generally* Compl.

Quicken's hasty suit in the EDMI attacks the Government's investigation, and asks that Court to grant unprecedented relief to stop a Government investigation and declare that it never made a materially false statement.  Preemptive Suit at 43-44 (Prayer for Relief), Mot. Ex. A.  Specifically, Quicken asks that Court to issue "declaratory relief" that Quicken did not violate the False Claims Act, and complied with HUD and FHA program rules.  *Id.*  It further asks that

---

[4]     The Department of Justice components that participated in this matter also included the Fraud Section of the Civil Division of the Department of Justice and the U.S. Attorney's Office for the District of Colorado.  Reimer Decl. ¶ 3, Opp. Ex. 14.  While Quicken had numerous contacts with the Homeownership Center located in Denver, Colorado, and venue would also be proper in Denver, the United States filed this suit in the District of Columbia given the greater concentration of witnesses around, and availability of records in, this District.

Court to issue an "injunction" against the Government, apparently to stop the United States from using, in its investigation, statistically relevant sampling to ascertain damages stemming from Quicken's misconduct. *Id.* The EDMI suit thus asks that Court to issue an extraordinary order endorsing the merits of various factual and legal positions Quicken will presumably attempt to assert in its defense of this FCA case.

## ARGUMENT

This Court should neither stay this action nor transfer it to the EDMI. A transfer under Section 1404(a) of Title 28 is inappropriate because the United States' chosen forum, the District of Columbia, has a strong connection to this dispute, and Quicken has not met its heavy burden to overcome the substantial deference afforded to the plaintiff's chosen venue. The lawsuit Quicken filed in the EDMI supports this analysis, because that lawsuit is clearly the kind of strongly disfavored "preemptive-strike" that courts refuse to reward with tactically motivated transfers or stays to facilitate the same.

**I.     THIS SUIT HAS A STRONG CONNECTION TO THIS DISTRICT AND QUICKEN OFFERS NO REASON TO DISTURB PLAINTIFF'S CHOICE OF FORUM.**

The United States chose to bring this action in this District because of its strong connection to the nationwide misconduct perpetrated by Quicken on the American taxpayers. This District has a strong connection to this case and the United States' choice of forum should be honored. Quicken's arguments in support of its request to transfer this suit to the EDMI rests on plainly flawed logic, demonstrably inaccurate facts, runs contrary to the law, and would incentivize the very type of behavior the courts have sought to discourage.

Section 1404(a) of Title 28 of the U.S. Code provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

"The moving party '[b]ears a heavy burden of establishing that plaintiffs' choice of forum is inappropriate.'"  *Thayer / Patricof*, 196 F. Supp. 2d at 31 (quoting *Pain v. United Tech. Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980)); *see also Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 66, 71 (D.D.C. 1998) (Harris, J.) (denying motion to transfer under § 1404, noting "[p]laintiff's choice of forum is due substantial deference" and "defendants have the heavy burden of establishing that plaintiff's choice of forum is inappropriate").  This is because "[t]he plaintiff's choice of a forum is 'a paramount consideration' in any determination of a transfer request."  *Thayer / Patricof*, 196 F. Supp. 2d at 31 (quoting *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22, 25 (D.D.C. 1997) (denying motion to transfer under § 1404(a))).  As the D.C. Circuit has put it, "[i]t is almost a truism that a plaintiff's choice of a forum will rarely be disturbed . . . unless the balance of convenience is strongly in favor of the defendant."  *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955) (quoted in *Bederson v. United States*, 756 F. Supp. 2d 38, 50 (D.D.C. 2010) (Kollar-Kotelly, J.) (denying motion to transfer under § 1404(a)).

This is especially so when a plaintiff's chosen forum has a "meaningful connection" to the controversy.  *United States v. H&K Block, Inc.*, 789 F. Supp. 2d 74, 78-79 (D.D.C. 2011) (Howell, J.).  In such circumstances, defendant's "weighty burden" to overcome the deference due to plaintiff's choice is a difficult one to meet.  *Id.* (defendant failed to overcome deference due to United States' chosen forum when controversy had a "meaningful connection" to this district even though the convenience of the parties and witnesses weighed in favor of transfer and other factors were neutral); *United States ex rel. Westrick v. 2d Chance Body Armor, Inc.*,

771 F. Supp. 2d 42, 47 (D.D.C. 2011) (Roberts, C.J.) (in FCA case, denying motion to transfer to Michigan under § 1404(a), noting "[s]ince millions of dollars in allegedly false claims were submitted in the District of Columbia, this district has a significant interest in providing a forum for these allegations of fraud.").

Courts defer to a plaintiff's choice of forum because "the main purpose of section 1404(a) is to afford defendants' protection where maintenance of the action in the plaintiff's choice of forum will make litigation *oppressively* expensive, inconvenient, difficult or harassing to defend." *Oceana v. Bureau of Ocean Energy Mgmt.*, 962 F. Supp. 2d 70, 73 (D.D.C. 2013) (Contreras, J.) (denying motion to transfer under § 1404(a)) (quoting *Starnes v. McGuire*, 512 F.2d 918, 927 (D.C. Cir. 1974) (*en banc*) (emphasis added)).  Accordingly, it is not sufficient for the defendant to show the defendant's forum is more convenient to the defendant as "merely shifting the inconvenience from one party to the other is not a sufficient reason to transfer." *Holland v. ACL Transp. Servs. LLC*, 815 F. Supp. 2d 46, 58 (D.D.C. 2011) (Bates, J.) (denying motion to transfer venue under § 1404(a)).

To overcome the strong presumption favoring a plaintiff's choice of forum, a defendant bears the burden on two showings: (i) that plaintiff "originally could have brought the action in the proposed transferee district," which is not in dispute here, and (ii) "that considerations of convenience and the interest of justice weigh in favor of transfer to that district," which involves "several private- and public-interest factors." *Vasser v. McDonald*, --- F. Supp. 3d ---, 2014 WL 5581113, at *8 (D.D.C. Nov. 4, 2014) (Contreras, J.) (denying motion to transfer under § 1404(a)).  "The private-interest considerations include: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the location where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) ease of access to sources of proof." *Id.*

"The public-interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home." *Id.* At bottom, however, "the Court may not transfer a case 'from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *Shapiro, Lifschitz*, 24 F. Supp. 2d at 70 (quoting *Pain v. United Techs. Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980), *overruled in part on other grounds by Piper Aircraft*, 454 U.S. at 241).

Here, Quicken has failed to meet its burden to overcome the strong deference to the United States' chosen forum. Indeed, the District of Columbia has strong ties to this case, this District is convenient to the witnesses, and no other factor favors transferring this action to the EDMI.

**A.    First Private Interest Factor:  The United States' Choice of Forum is Entitled to Deference Because the Forum Has a Strong Connection to This Case.**

This is not a case where a federal agency is tangentially involved in the underlying facts or where the involvement of officials in the District of Columbia merely consists of ultimate responsibility for the relevant agencies. The United States chose this forum because this district has a strong connection to the facts and witnesses in this case. The intimate involvement of Government employees and officials in this District and the convenience of this forum to the parties guided the United States' decision to file here.[5]

---

[5]    Quicken is incorrect that the United States has confined its FHA enforcement suits to the Southern District of New York ("SDNY"). Open. Br. at 16. The largest FCA case based on FHA fraud was brought in this Court against the largest financial institutions in the nation, *i.e.*, Bank of America, Citibank, J.P. Morgan Chase, GMAC, and Wells Fargo. *See* Complaint in *United States v. Bank of Am. Corp.*, Civ. A. No. 12-0361 (RMC) (D.D.C.), Opp. Ex. 16. In that case, as here, the United States asserted FCA claims based on the following allegation: "the Banks knowingly presented or caused to be presented to the United States false or fraudulent claims for payment or approval, including but not limited to improper claims for payment of FHA residential mortgage insurance or guarantees." *Id.* at ¶ 112. The United States has

1.      **This Dispute Focuses on Quicken's Interactions with HUD and FHA Officials Located in this District.**

As an initial matter, the case involves Quicken's continuous contacts with individuals in this District. Quicken's misconduct involved borrowers and HUD officials all across the nation, but this case focuses on false statements and claims made by Quicken that were received by FHA and HUD in the District of Columbia. Quicken's initial application to become a Direct Endorsement Lender was made to FHA at its headquarters located in the District of Columbia. Compl. ¶¶ 21, 103; *see supra* at 4. In that initial application, Quicken falsely represented it would "fully comply with all HUD guidelines, regulations, and requirements," Compl. ¶ 84, when it fact it did not. Compl. at 28-56.

Moreover, to continue participating in the Direct Endorsement Lender program, Quicken submitted annual certifications of its compliance with FHA program rules to FHA headquarters located in the District of Columbia. Compl. ¶¶ 22, 85, 103-06; *supra* at 4. These certifications were false as Quicken failed to comply with material terms of FHA's program rules as alleged in the Complaint. Compl. at 28-56.

Also, in connection with obtaining FHA endorsement of loans, Quicken submitted loan-level certifications that each FHA loan it underwrote complied with applicable program rules and underwriting guidelines. Compl. ¶¶ 87-89, 125-26, 139-42, 149-50, 173-74; *supra* at 4. These certifications were false. Compl. at 28-56. Each of the endorsements containing these

---

similarly brought suit against SunTrust Mortgage, Inc. in this District alleging FCA claims based on false claims for payment of FHA insurance. *See* Complaint in *United States v. SunTrust Mortg., Inc.*, Civ. A. No. 14-1028 (RMC) (D.D.C.), Opp. Ex. 17. While both cases were settled at the time of filing as consent judgments, the fact the United States filed these two lawsuits in this District rebuts any notion that the United States has somehow limited its FHA enforcement to SDNY.

certifications was submitted through systems administered by FHA staff in this District.  Compl. ¶ 23; *supra* at 4.

Further, when borrowers default on HUD endorsed loans, claims for FHA insurance are submitted to and either processed by FHA staff in the District of Columbia or electronic systems administered by FHA staff in the District of Columbia.  Compl. ¶¶ 24, 92-95; *supra* at 4.

Importantly, the totality of systems used by HUD and FHA to process lender applications, lender certifications, loan endorsements, loan insurance, and insurance claims are administered by staff located in Washington, D.C., namely in HUD's Offices of Financial Services, Single Family Program Development, and Single Family Housing.  *See* HUD Major Information Systems, Opp. Ex. 13 (FHA Connection, Single Family Insurance System, and Single Family Housing Enterprise Data Warehouse); System of Records Notices, Opp. Exs. 9, 11-12, 18-20.[6]

### 2.    This District is A Convenient Venue for Potential Witnesses.

Quicken is correct in its motion that individual loans are overseen by the four Homeownership Centers located in Philadelphia, Atlanta, Denver, and Santa Ana.  Open. Br. at 15.    As a national lender, Quicken has significant loans overseen by all four of the homeownership centers.  Significantly, however, none of those four homeownership centers are located near Detroit.  *Supra* at 3.  Moreover, this District is geographically proximate to the Philadelphia Homeownership Center, which is the Homeownership Center responsible for Quicken's principal lending region (*see infra* at 18 (heatmap)), making travel to this District by witnesses from Philadelphia more convenient as compared with the EDMI.  *See* Google Maps, http://maps.google.com (Last visited May 12, 2015) (the District is 139 miles from Philadelphia;

---

[6]      Of course, the funds for FHA insurance claims are paid by the U.S. Treasury located in the District of Columbia.  31 U.S.C. §§ 301(a), 302; Compl. ¶ 95.

Detroit is 584 miles from Philadelphia).  The geographical convenience to this Homeownership Center combined with the obvious convenience to HUD and FHA headquarters staff makes this District a more convenient venue for potential witnesses in this case.

Also, based on its experiences in other similar cases, the United States has a sound basis for believing that numerous witnesses in this litigation will be from this district.  For example, discovery in *United States v. Wells Fargo*, Civ. A. No. 12-7527 (S.D.N.Y.) -- an FCA suit related to underwriting and origination of loans insured by FHA -- is nearing a close and twenty-five (24) of thirty-two (31) depositions of FHA witnesses have or will occur in the District of Columbia.  Reimer Decl. ¶ 14, Opp. Ex. 14.[7]

Here, it is similarly reasonable to expect that Quicken will take numerous depositions of HUD witnesses in the District of Columbia.  In testimony taken during the investigation, Quicken identified contacts with numerous HUD officials located in the District of Columbia. For example, Ms. Bobbi MacPherson, Quicken's FHA Product Manager, testified that her work on FHA loans for Quicken regularly required her to talk with then-current HUD officials including Charles Coulter, Genger Charles, Karin Hill, Arlene Nunes, Joy Hadley, and Justin Burch, all of whom work (or worked) in the District of Columbia at HUD headquarters. MacPherson Tr. at 91-93, 107-08, Opp. Ex. 4; HUD Decl. ¶¶ 18-24, Opp. Ex. 5.

Even if Quicken disavowed any intention to use the documents or testimony of FHA and HUD officials located in the District of Columbia in its defense of this action, the United States currently intends to use witnesses from the District of Columbia, as well as witnesses from Philadelphia and Atlanta for whom the District of Columbia is a more convenient forum, to

---

[7]     Witnesses traveled to the District of Columbia from other locations for nine of the depositions as this District was the most convenient location for the parties.  Reimer Decl. ¶ 14, Opp. Ex. 14.  Fourteen witnesses live in the Washington, D.C. area.  *Id.*  Two witnesses testified twice as both an individual and an FHA representative for a Rule 30(b)(6) deposition.  *Id.*

affirmatively prove this case.  This was an important consideration guiding the United States to choose this forum for this dispute.

> ### 3.    Courts Have Refused to Transfer Actions Under Circumstances Similar to Those Presented Here.

The United States has alleged direct involvement by HUD and FHA officials in the processes in which Quicken made its false statements and claims.  Courts have found these kinds of connections with this district to justify the reasonable choice of venue in this district, and to warrant deference to that choice of venue.  *See 2d Chance Body Armor*, 771 F. Supp. 2d at 47; *H&R Block*, 789 F. Supp. 2d at 79-80.  Accordingly, this District, plaintiff's choice of forum, has a strong connection to this case.  *Cf. Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128-29 (D.D.C. 2001) (Urbina, J.) (denying motion to transfer under § 1440(a) when plaintiff alleged that agency officials in the District were involved in decision making processes); *Oceana, Inc. v Pritzker*, --- F. Supp. 2d ---, 2013 WL 5801755, at *4 (D.D.C. Oct. 28, 2013) (Boasberg, J.) (denying motion to transfer under § 1404(a), concluding "This case, instead, involves a decision made at the headquarters of a federal agency with overwhelmingly regional -- and perhaps even national -- effects.  Plaintiff's choice of forum thus deserves substantial deference and counsels against transfer.").[8]

---

[8]     Quicken cites *SEC v. Ernst & Young*, 775 F. Supp. 411, 415-16 (D.D.C. 1991), and other authorities for the proposition that "an agency's headquarters in the District of Columbia carries no weight to choice of forum, otherwise nearly all federal enforcement actions would proceed in the District of Columbia."  Open. Br. at 19.  But Quicken fails to appreciate that it is not HUD's headquarters but rather the involvement of HUD officials in this District that drove the United States to file here.  Also, Quicken's argument, taken literally, would render this venue inappropriate for enforcement actions against any company other than those headquartered here.  This is obviously not the law as this District routinely handles the most significant of FCA and other enforcement matters.  Indeed, the Judicial Panel on Multidistrict Litigation routinely choses this District to hear nationwide FCA disputes due, in part, to the expertise of its bench.  *See In re Health Mgmt. Assocs. Inc. Qui Tam Litig.*, 11 F. Supp. 3d 1346 (J.P.M.L. 2014).

**B.  Second Private Interest Factor: Quicken's Preferred Forum Will Inconvenience Witnesses in this District Relevant to This Case.**

Through its Motion, Quicken expresses that its preferred forum is the EDMI and accuses the United States of forum shopping to avoid that forum.  Open. Br. at 3, 14, 16.  Not only is Quicken's argument ironic given the clear forum shopping behind its Preemptive Suit, but courts have recognized that a plaintiff's choice of venue is necessarily motivated, in part, by strategic concerns of convenience, which are proper.  *See Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 12-13 (D.D.C. 2007) (Lamberth, J.);[9] *Oceana*, 962 F. Supp. 2d 78.

Moreover, Quicken's Preemptive Suit reinforces this District's strong connection with this matter by revealing that Quicken's defenses in this case focus on the activities of FHA and HUD personnel located in the District of Columbia.  That suit shows that Quicken disagrees with decisions made by HUD and FHA officials regarding the processes and criteria used for assessing a loan's compliance with applicable rules and regulations.  Preemptive Suit ¶¶ 58-76, 89-94, Mot. Ex. A.  For example, Quicken's Preemptive Suit specifically identifies a Federal Register notice published by HUD's Office of the Assistant Secretary for Housing -- Federal Housing Commissioner (located in Washington, D.C.) soliciting comments on means to "improve the efficiency and effectiveness of FHA's quality assurance process" and directing comments to be submitted to HUD in this District.  *See* 78 Fed. Reg. 41075-01 (Jul. 9, 2013). Quicken thus argues in its Preemptive Suit that this dispute centers on the actions of HUD and

---

[9]     "[T]his Court is well-aware that for each strategic rationale that motivated plaintiffs to file suit in this District, there is likely an equally compelling strategic basis -- aside from the statutory standards of convenience and justice -- for defendants and Intervenors' strong desire to ensure that this litigation takes place in the Middle District of Florida.  In this sense, defendants and Intervenors could be forum-shopping just as plaintiffs are allegedly doing so. . . . in light of this Court's great deference to the plaintiffs' chosen forum and a general lack of other factors that would overcome this deference, the plaintiffs' alleged forum shopping will be insufficient to warrant transfer to the Middle District of Florida."  *Sierra Club*, 523 F. Supp. 2d at 12-13.

FHA officials located in this District and then argues here that this dispute has no connection to this District.  Quicken's Motion underscores the point that Quicken's defense in this action will focus on the actions of HUD and FHA officials in the District of Columbia.  Open. Br. at 17-18.

The United States acknowledges that there are witnesses located in EDMI, and in other districts around the country such as Atlanta, Philadelphia, Santa Ana and Denver.  Quicken's own declaration confirms that its FHA underwriters are now found across the nation.[10]  But the diverse locations of potential witnesses does not make EDMI any more convenient than this district and certainly does not overcome the paramount deference afforded to the United States' chosen forum given the significant involvement of witnesses in and around this District.

C.    **Third Private Interest Factor:  The Facts Underlying This Matter Occurred Throughout the Nation But Quicken's Fraud on the Government Was Directed to Officials in the District of Columbia.**

The third private-interest consideration is "the location where the claim arose."  *Vasser*, 2014 WL 5581113, at *8.  This inquiry focuses on where "the most significant events giving rise to the claims" occurred.  *FTC v. Graco Inc.*, Civ. A. No. 11-2239 (RLW), 2012 WL 3584683, at *5 (D.D.C. Jan. 26, 2012).[11]  Although the events in this case occurred throughout the country, the most significant events occurred here -- namely, false statements made by Quicken to HUD and FHA personnel in the District of Columbia.  As such, this factor also weighs against a transfer.

As noted above, Quicken's false statements and claims were made to FHA and HUD through officials, including officials maintaining information systems, located in this District.

---

[10]    *See* Thornton Decl. (R.4-2) ¶¶ 5-6 (even now Quicken has 54 FHA underwriters located across the nation representing 31 percent of its total FHA underwriters).

[11]    In its Opening Brief, Quicken selectively and misleadingly quotes *Graco Inc.* by omitting the above passage.  *See* Open. Br. at 23.

Quicken's FHA executives regularly transacted business with HUD and FHA officials located in the District of Columbia.  Ultimately, the U.S. Treasury, also located in the District of Columbia, paid the claims submitted because of Quicken's misconduct.[12]  Notably, Quicken identifies no particular actions taken by Government officials relevant to this dispute in the EDMI. Consequently, while the claims in this action arise from events occurring across the nation, including Michigan and other places, the target of Quicken's unlawful scheme are located in this District.  Thus, if anything, this factor favors the United States' selection of venue.

**D.**   **Fourth and Fifth Private Interest Factors: The District of Columbia is a Convenient Forum for the Parties and Witnesses.**

Quicken argues that transfer is warranted because nearly all of its executives and officers are located in Detroit, and, thus, the District of Columbia is not a convenient forum for it or its witnesses.  This argument is flawed and is an insufficient basis for transferring this action.

**1.**   **Quicken Ignores the Convenience of This Forum For Government Witnesses.**

In contending that the EDMI is more convenient for the parties and witnesses, Quicken, ignores that the Government's witnesses are nearly all located in Washington, D.C.  *Supra* at 3-5.  In large part Quicken merely seeks to shift burdens of travel away from Quicken itself and onto the United States.   Courts have rejected this rationale as a basis for transfer.  *See 2d Chance Body Armor*, 771 F. Supp. 2d at 48 ("litigating in the transferee district must not merely shift inconvenience to the plaintiffs, but rather should lead to an overall increase in convenience for the parties"); *Nat'l Shopmen Pension Fund v. Stamford Iron & Steel Works, Inc.*, 999 F. Supp. 2d 229, 233-34 (D.D.C. 2013) (Kollar-Kotelly, J.) (denying transfer under § 1404(a), "appears that

---

[12]     Quicken also concedes, as it must, that it underwrote and endorsed 134 FHA-insured mortgage loans, with original loan amounts totaling more than $43 million for properties located in the District of Columbia.  Open. Br. at 27-28; Compl. ¶ 19.

transferring this action to the District of Connecticut would merely shift the balance of inconvenience from [defendant] to the Plaintiffs. . . . such a shift is insufficient to warrant a transfer to the defendant's favored venue.").

### 2.     Quicken Ignores Its Own Connections to the District of Columbia.

Quicken also ignores its own connections to the Washington, D.C. metropolitan area in seeking a transfer.  For example, the counsel who have represented Quicken during this investigation are located here.  Reimer Decl. ¶ 8, Opp. Ex. 14.   Also, the FHA loans endorsed by Quicken that underlie this matter were predominately on homes located along the eastern seaboard, including in and around the District of Columbia.  A "heat map" showing the relative concentration of Quicken's FHA-insured loans across the nation plainly reveals the District of Columbia to fall squarely in Quicken's principal lending region:



Reimer Decl. ¶ 15, Opp. Ex. 14.

Quicken executives also routinely travel to the District of Columbia on Quicken business, with Quicken's CEO, Bill Emerson, and other Quicken executives attending numerous conferences and meetings, and providing Congressional testimony. News Articles re: Conferences & Congressional Testimony, Opp. Ex. 3 (noting Emerson's travel to DC); Email of 4/27/2011, Opp. Ex. 21 (noting MacPherson's travel to DC).  Additionally, Quicken sponsors one of the area's largest sports tournaments -- marketing for which involved DC-area military families meeting with Emerson.  *See* News Article re: Quicken National at Congressional Country Club, Opp. Ex. 2.  Quicken even lists Bethesda, Maryland, a city that borders the District of Columbia, as one of nine options in its job site search engine.  Quicken Website, Quicken Careers,  https://careers-quickenloans.icims.com/jobs/intro?hashed=-35773334  (last visited May 12, 2015) ("Location" pick list identifying Bethesda, MD as a location).  The extent of Quicken's connections to this District diminishes the force of its contention that this District is inconvenient to Quicken.  *See, e.g., Harrison v. Illinois Cent. R. Co.*, Civ. A. No. 08-0748, 2008 WL 6154521, at *2 (S.D. Ill. May 28, 2008) (denying motion to transfer under § 1404(a) in part because defendant routinely traveled to plaintiff's chosen forum); *Couvrette v. Couvrette*, Civ. A. No. 12-2771, 2013 WL 2898531, at *4 (S.D. Cal. Jun. 13, 2013) (same); *Davenport v. Hansaworld USA*, Civ. A. No. 12-0233, 2013 WL 5406900, at *7 (S.D. Miss. Sept. 25, 2013) (denying motion to transfer, "it appears that interstate and international travel are a routine part of [defendant's] business, which further militates against its convenience concerns").

### 3.     Quicken Ignores the Diverse Geographic Scope of Its Alleged Fraud.

In seeking a transfer, Quicken also does not explain how the EDMI is more convenient to witnesses located outside of the EDMI and the District of Columbia.  It is clear that Quicken is a national company and this case will necessarily involve witnesses across the United States.  Quicken, however, fails to explain how the EDMI will be more convenient to these witnesses.

Quicken is a national mortgage lender with a broad national reach, touting itself as "the nation's second largest retail home mortgage lender and largest FHA lender."  Quicken Press Release re Preemptive Suit at 2, Opp. Ex. 1.  Quicken has extensive lending in all fifty states and the District of Columbia.  *Id.*  ("The company closed $140 billion of mortgage volume across all 50 states in 2013-2014.").  Quicken advertises itself nationally, including through billion dollar March Madness competitions and sports arena sponsorship outside of the Detroit area.  News Articles re Sponsorships, Opp. Ex. 22.  Quicken calls seven different cities, spread across the United States, "home."   Quicken Website, Locations, http://www.quickenloanscareers.com/locations/ (last visited May 12, 2015).  The United States thus expects that it will call witnesses from across the nation, such as borrowers, appraisers, and other persons relevant to specific loans.  *See, e.g.,* Compl. ¶¶ 125-26, 139-42, 149-50, 173-74 (identifying examples of loans made for properties across the country).

### 4.     No Witnesses Will Be Unavailable For Trial Due to the FCA's Provision for Nationwide Service of Trial Subpoenas.

Lastly, this Court will not face a situation where the extra-district reach of its trial subpoenas would inhibit the trial of the case, as might be true in other types of cases.  In the FCA, Congress recognized that trials might involve witnesses from across the country, and it dispensed with the geographical limit on Rule 45 trial subpoenas.  Specifically, Section 3731(a) of Title 31 provides that "[a] subpona [sic] requiring the attendance of a witness at a trial or hearing conducted under section 3730 of this title [the FCA] may be served at any place in the United States."  31 U.S.C. § 3731(a).  Consequently, no witness will be unavailable for trial in this action by reason of it being tried in the District of Columbia.

### E.    Sixth Private Interest Factor: Quicken's Documents Are Electronic and the District is Otherwise a Convenient Forum.

Quicken argues that transfer is appropriate because "the bulk of relevant evidence is in Detroit." Open. Br. at 28-29. Quicken, however, ignores recent law that "in the context of a motion for a transfer of forum, the location of documents, given modern technology, is less important in determining the convenience of the parties." *FC Inv. Grp. LC v. Lichtenstein*, 441 F. Supp. 2d 3, 14 (D.D.C. 2006) (Collyer, J.) (denying motion to transfer under § 1404(a), quoting *Thayer/Patricof*, 196 F. Supp. 2d at 36). Indeed, electronic documents "can easily be transported to Washington . . . [and] many will be provided through discovery to [defendant's] counsel[.]" *Thayer/Patricof*, 196 F. Supp. 2d at 36.

Here, Quicken's counsel of record in this case, and the counsel that has been responsible for producing documents in this matter for several years, is located in the District of Columbia. *See, e.g.,* Letter from Hefferon of 3/8/2013, Opp. Ex. 23; Reimer Decl. ¶ 8, Opp. Ex. 14. Moreover, nearly all of Quicken's documents are in electronic format. *See id.* ("Much of the information requested in the Subpoena is preserved in Quicken's databases and computer systems[.]"). As one of Quicken's appraisal underwriters testified: "everything is paperless. I don't have any hard files." Young Tr. at 10, Opp. Ex. 24. Consequently, the location of Quicken's documents offers no reason to transfer this matter to the EDMI.[13]

---

[13]     Quicken's citation to *FTC v. Graco Inc.*, Civ. A. No. 11-2239 (RLW), 2012 WL 3584683, at *7 (D.D.C. Jan. 26, 2012), in support of its access to proof argument is misplaced. Open. Br. at 29 n.7. In that case, this District lacked any meaningful connection to the dispute when the FTC merely argued that the case was a nation-wide controversy and failed to identify any specific connection to the District. *Id.* at *6. Further, in *Graco*, the Court noted that "the location of documents is increasingly irrelevant in the age of electronic discovery." *Id.* at *7 (quoting *Fanning v. Capco Contractors, Inc.*, 711 F. Supp. 2d 65, 70 (D.D.C. 2010) (Kollar-Kotelly, J.) (denying motion to transfer, noting "the location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and transported to any appropriate forum. Moreover, the physical location of witnesses is less important when testimony may be taken by deposition (including by deposition *de bene*

Further, Quicken ignores the fact that the Government's documents reside on computer systems administered by officials in the District of Columbia. *Supra* at 4. Indeed, Quicken's argument in this regard is just another variation on its attempt to focus only on its own convenience. As noted, courts have rejected such a myopic basis for seeking a transfer. *See 2d Chance Body Armor*, 771 F. Supp. 2d at 48; *Nat'l Shopmen*, 999 F. Supp. 2d at 233-34; *Int'l Painters & Allied Trades Indus. Pension Fund v. Painting Co.*, 569 F. Supp. 2d 113, 118-19 (D.D.C. 2008) (Urbina, J.) (denying motion to transfer under § 1404(a) when transfer would have merely shifted inconvenience to plaintiff).

<p align="center">*   *   *</p>

In sum, Quicken has not met its burden to show that the private interest factors overcome the substantial deference owed to the United States' choice of forum.

### F.  Public Factors Favor Keeping This Case in the District of Columbia.

Public factors further offer no reason to disrupt the "paramount consideration" of the United States' chosen forum.

*First*, the United States agrees that both the EDMI and this Court are presumed to be equally competent to decide questions of federal law. Open. Br. at 29. Consequently, this factor does not support Quicken's Motion.

*Second*, a comparison of the relative congestion of dockets does nothing to favor the EDMI. As Quicken concedes, the median filing-to-disposition period is more than a month better in this District (7.6 months) than the EDMI (8.8 months). Open. Br. at 29-30.[14]

---

*esse*) and presented to the Court at either the summary judgment stage or a bench trial. Witnesses may also testify in this Court at trial via live videoconference.")).

[14]    Furthermore, Quicken mis-cites the case it relies on to support its focus on median filing-to-trial statistics, *Virts v. Prudential Life Ins. Co. of Am.*, 950 F. Supp. 2d 101, 108 (D.D.C. 2013) (Bates, J.). Open. Br. at 30. In that case, the Court expressed no preference for filing-to-

*Third*, Quicken's claim that this is a local controversy is mystifying. Far from a local matter, this case involves the issuance and endorsement of mortgages for properties across the country that adversely affects taxpayers throughout the nation. Quicken's attempt to portray this as a local dispute is belied by the very press releases it issued in connection with its Preemptive Suit. *See* Quicken Press Release re: Preemptive Suit at 2, Opp. Ex. 1 (Quicken is "the nation's second largest retail home mortgage lender and largest FHA lender"). The nationwide nature of the conduct that underlies the United States' claims does not support a transfer.[15]

*Fourth, and lastly,* the Court should consider and weigh against Quicken the filing of the Preemptive Suit as a ploy to deprive the United States of its chosen forum. As discussed below, Quicken Loan's suit filed in EDMI is clearly preemptive. *Infra* at 24-33. Courts have viewed attempts by a prospective defendant to race to the courthouse before a government lawsuit is filed as "lamentable." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 978 (3d Cir. 1988) (true defendant's race to the courthouse "created a lamentable spectacle, which was tantamount to the blowing of a starter's whistle in a foot race") (citing *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 750 (7th Cir. 1987) (rigid first-filed rule "will encourage an unseemly race to the courthouse and, quite likely, numerous unnecessary suits.")). The law is clear on this front: the federal judiciary strongly disfavors, from an equitable perspective, "preemptive-strike" filings designed to beat the proper plaintiff in a race to the courthouse. *Infra* at 24-33. The purpose of this rule is

---

trial over filing-to-disposition statistics and instead cited both numbers (which in that case both supported transfer) in concluding that this factor "slightly" supported transfer. *Virts*, 950 F. Supp. 2d at 108. Not even "slight" support can be gleaned here when the statistics do not clearly favor EDMI over this Court.

[15]   Quicken's reliance on *Bergman v. U.S. Dep't of Transp.*, 710 F. Supp. 2d 65, 75-76 (D.D.C. 2010) (Sullivan, J.), which concerned a highway project physically located in the EDMI, is clearly distinguishable. Quicken's misconduct here stemmed from transactions concerning real property located around the United States and the Government's claims arise from statements and claims made to HUD and FHA in the District of Columbia.

equally clear, namely that such filings create disfavored piecemeal litigation, delay the complete resolution of disputes, encourage unseemly races to the courthouse, and promote numerous unnecessary suits that further crowd judicial dockets. *Tempco*, 819 F.2d at 750. Despite the clarity of these holdings, Quicken forged ahead with an unmeritorious preemptive suit. This Court should consider and soundly disapprove of this gamesmanship by concluding in its public factor analysis that this conduct undermines Quicken's request for a transfer.

## II. QUICKEN'S LAWSUIT FALLS INTO THE CATEGORY OF "PREEMPTIVE-STRIKE" LAWSUITS THAT DO NOT WARRANT APPLICATION OF A "FIRST-TO-FILE" RULE.

Perhaps recognizing that its transfer request would fail to pass muster under a customary Section 1404(a) venue analysis, Quicken filed its Preemptive Suit and now seeks to use that suit as a basis for seeking a stay or transfer of this action based on the claim that its action was "filed first." Open. Br. at 2. Quicken's first filed argument is unavailing. Courts have repeatedly admonished prospective defendants that abusing judicial resources by filing "preemptive-strike" suits will not confer on them the benefits of the first-to-file rule.

As courts have explained, "allowing anticipatory filers to secure the benefit of a chosen venue would discourage parties from attempting to resolve their disputes without resorting to litigation." *Michael Miller Fabrics, LLC v. Studio Imports Ltd.*, Civ. A. No. 12-3858, 2012 WL 2065294, at *6 (S.D.N.Y. Jun. 7, 2012) (issuing injunction compelling filer of preemptive suit to dismiss its case). "This type of [preemptive strike] behavior only exacerbates the risk of wasteful litigation." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,* 626 F.3d 973, 980 (7th Cir. 2010) (transferring preemptive suit, noting courts "have made clear that where the facts of that case are replicated -- that is, where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief -- we ordinarily give priority to the coercive action"). As explained in detail below, Quicken's suit clearly falls into this category.

This court should not reward Quicken for engaging in the type of preemptive-strike behavior disfavored by the courts. Moreover, the lack of any merit in its suit further supports declining to stay or transfer this lawsuit on the basis of Quicken's suit.[16]

**A.    The First-To-File Rule Does Not Apply When the First-Filed Suit Is Merely a Preemptive Strike.**

The D.C. Circuit has held that "choice of forum cannot be suitably made by the mechanical application of [the first-to-file] principle." *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975). Rather, the application of rules concerning parallel litigation "requires a balancing not of empty priorities but of equitable considerations genuinely relevant to the ends of justice." *Id.* at 628 (citations omitted). Accordingly, courts have consistently recognized that the first-to-file rule "should not be applied rotely, particularly if a suit is filed as a preemptive strike to establish a preferred jurisdiction." *Thayer/Patricof Education Funding, LLC v. Prior Res., Inc.*, 196 F. Supp. 2d 21, 30 (D.D.C. 2002) (Bates, J.) (citing *Lewis v. National Football League*, 813 F. Supp. 1, 4 (D.D.C. 1992) (Lamberth, J.)).

Courts have considered various factors in determining whether a prior lawsuit was a "preemptive strike" that is not entitled to deference in deciding venue. One consideration is "whether it appears that the [first-filed] declaratory judgment action was filed in anticipation of litigation by the other party. Courts have held that such a preemptive strike should be disregarded in selecting the proper forum if equitable considerations so merit." *Lewis*, 813 F. Supp. at 4 (citations omitted). Additional considerations may include (i) whether "the first action

---

[16]    The United States intends to file in the EDMI a motion to dismiss Quicken's Preemptive Suit for a lack of jurisdiction and a failure to state a claim before the Court's Hearing on May 29, 2015 -- almost a month before that motion would otherwise be due under the Rules. When that motion is filed in the EDMI, the United States will also supplement the record in this Court with that motion through a notice of filing. The United States will move in the alternative to transfer the EDMI action to this district as the United States' choice of forum deserves deference.

was filed in the midst of good faith settlement discussions," *Fed'n Internationale de Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 67 (D.D.C. 2003) (Huvelle, J.) (denying motion to transfer or stay where related action was merely a preemptive filing); (ii) whether "the two suits were filed closely together in time," *id.* at 68; and (iii) whether the cases "ha[ve] progressed very far." *Id.*

Another important consideration is whether the suit is merely an action for declaratory relief, where the claims are merely "dressed up defenses in anticipation of [the plaintiff's] suit," and its action "is really a suit about a suit." *Thayer/Patricof*, 196 F. Supp. 2d at 30. In particular, the D.C. Circuit has warned that it is impermissible for a party to use the declaratory judgment procedure to preemptively sue another party that is clearly the proper plaintiff:

> The anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum and timing, and it provides a disorderly race to the courthouse.

*Hanes v. Millard,* 531 F.2d 585, 592-93 (D.C. Cir. 1976) *superseded by statute on other grounds* (noting general rule, acknowledging exception for patent cases).

Accordingly, "[c]ourts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Swish Mktg. v. FTC*, 669 F. Supp. 2d 72, 78 (D.D.C. 2009) (Bates, J.) (dismissing preemptive declaratory judgment action) (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004) (dismissing preemptive declaratory judgment action, finding such action was merely "procedural fencing to secure the [natural defendants'] choice of forum")).

Indeed, as other courts have noted, "[t]he wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or choose a

forum," *Am. Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir. 1939) (affirming dismissal of declaratory judgment action), and as such it "is not a prize to the winner of the race to the courthouse." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) (affirming denial of motion to stay or transfer based on preemptive declaratory judgment action) (quotation marks omitted), *abrogated on other grounds Pirone v. MacMillan, Inc.*, 894 F.3d 579 (2d Cir. 1990).

Yet another factor is whether "full, fair, and complete adjudication of all issues may be had before [the present] court." *Lewis*, 813 F. Supp. at 5.   This factor should be given "strong weight." *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 979 F. Supp. 2d 104, 117 (D.D.C. 2013) (Kollar-Kotelly, J.) (transferring the preemptive declaratory action to the second filed coercive proceeding, giving "strong weight" to the fact the second filed proceeding can resolve the claims and provide other remedies).   As the court in *Morgan Drexen* explained, "[w]here a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified." *Id.*

In fact, courts have recognized that, regardless of which case was filed first, an action seeking coercive relief (such as the instant action, which seeks enforcement of the False Claims Act) should be given priority over a preemptive declaratory action.  *See Research Automation*, 626 F.3d at 980 (noting that judicial action seeking coercive relief should be given priority over declaratory action, regardless of which case was filed first); *Triple Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (affirming dismissal of first-filed declaratory judgment action in favor of later filed coercive action).

**B.      All Relevant Equitable Considerations Factor Against Affording Deference to Quicken's Preemptive-Strike Suit.**

Quicken's suit in the EDMI has all the makings of the type of preemptive suit that is entitled to no weight and does not warrant a transfer to the "first-to-file" district or a stay in this matter.

*First*, Quicken's suit was filed within hours of a conversation with Quicken's counsel and senior executives in which the United States stated it had authority to file suit, summarized the specific allegations the United States intended to make in its complaint, and expressed the United States' intent to file its suit the following week unless there was any progress towards settlement. Reimer Decl. ¶ 10, Opp. Ex. 14; *see also Thayer/Patricof,* 196 F. Supp. 2d at 30 (suit filed seven hours after rejecting settlement offer and receiving notice of intent to sue was preemptive strike, rendering first-to-file rule inapplicable); *Lewis*, 813 F. Supp. at 4  (declaratory judgment action was preemptive in nature when it was brought in anticipation of other suits, rendering first-to-file rule inapplicable); *Int'l Painter & Allied Trades Indus. Pension Fund v. Painting Co.,* 569 F. Supp. 2d 113, 116-17 (D.D.C. 2008) (Urbina, J.) (declaratory judgment action filed "with full knowledge of the plaintiffs' intention to file suit . . . if the defendant did not respond within ten days" was a preemptive strike, rendering first-to-file rule inapplicable).

Thus, when Quicken filed its lawsuit, it was keenly aware of the United States' imminent FCA suit.  By contrast, the actions Quicken challenges in the Preemptive suit, namely the use of sampling in the investigation and the letter from HUD suspending review of certain loans, were both taken in 2013, almost two years before Quicken filed suit.  Thus, Quicken waited two years after the challenged action and only filed suit after the United States made clear it intended to file this FCA suit.  This timing creates a strong inference that the case was a preemptive strike.  *See Fed. Ins. Co. v. May Dep't Stores Co.*, 808 F. Supp. 347, 350 (S.D.N.Y. 1992) (holding that

forum shopping can be inferred from the fact that the declaratory action was filed after receipt of notice of intent to sue).

In fact, Quicken itself admits that its suit filed in the EDMI was directed against the United States' impending FCA action.  In its Complaint, Quicken states: "[a]ccording to the DOJ and HUD-OIG, a lawsuit against the company will be filed if Quicken does not acquiesce to their demands," asserting that it was left "with no choice but to seek relief from this Court." Preemptive Suit ¶¶ 6, 12, Mot. Ex. A.  Quicken also issued a press release the same day it filed its complaint, stating: "[t]he company was left with no alternative but to take this action after the DOJ demanded Quicken make public admissions that were blatantly false, as well as pay an inexplicable penalty or face legal action."  Quicken Press Release re: Preemptive Suit at 1, Opp. Ex. 1.  Thus, Quicken itself has publicly admitted that it filed a preemptive suit in the face of an impending suit from the United States.

*Second*, Quicken filed its preemptive suit in the midst of good faith settlement discussions.  *See Nike*, 285 F. Supp. 2d at 67 (a factor that "militate[s] against the [first-to-file] rule [is] that the first action was filed in the midst of good faith settlement discussions"). Quicken filed its suit hours after a settlement discussion that was specifically requested by Quicken's counsel.  Reimer Decl. ¶¶ 10-13, Opp. Ex. 14.  During the discussion, counsel for the United States asked Quicken to respond with a good faith settlement offer, and announced that in the absence of meaningful progress towards settlement the United States would file its suit the following week.  *Id.*  Following the discussion, rather than respond with a settlement proposal as requested by the United States, Quicken instead raced to the courthouse to file its preemptive suit without any advanced notice to the United States and within hours of the parties' discussion. Affording deference to Quicken's suit -- the allegations of which are based on information

disclosed in the course of confidential settlement negotiations -- could chill future attempts by the Department of Justice to explore a resolution with a potential FCA defendant for fear of being subject to an anticipatory lawsuit.  This Court should not countenance such a result.

*Third*, Quicken's suit in the EDMI falls into the category of suits that the D.C. Circuit and numerous other courts have warned against: a declaratory judgment action essentially seeking to assert defenses to the expected-plaintiff's claims.   Although Quicken raises Administrative Procedure Act ("APA"), contract, and due process claims, its prayer for relief asks the court to affirmatively declare "that each Subject Loan was properly underwritten and originated by Quicken in compliance with FHA program requirements" and to enjoin the United States "from using any sampling to determine whether any (or how many) of the Subject Loans were properly underwritten and originated in compliance with FHA program requirements and from initiating or pursuing any suit or other proceeding based on or using any such sampling, including without limitation any suit under the False Claims Act."  Preemptive Suit at 43, Mot. Ex. A.  Quicken's requested relief makes clear Quicken is essentially seeking to pre-litigate its defenses in this case in the Preemptive Suit.  *See Research Automation*, 626 F. 3d at 980 (noting that judicial action seeking coercive relief should be given priority over declaratory action, regardless of which case was filed first); *Triple Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (affirming dismissal of first-filed declaratory judgment action in favor of later filed coercive action).

*Fourth*, both suits were filed close together in time, and neither has progressed.  *See Nike*, 285 F. Supp. 2d at 67 ("Other factors that militate against the [first-to-file] rule are … that the two suits were filed closely together in time and neither has progressed very far.")  The instant action was filed within four business days of Quicken's preemptive suit.  Neither complaint has

been answered or otherwise responded to as of yet.   Accordingly, this factor also militates against giving priority to Quicken's preemptive suit.

*Fifth*, this Court can provide full, fair, and complete adjudication of all issues involving whether Quicken violated the False Claims Act.  *See Lewis*, 813 F. Supp. at 5 ("There is no reason to transfer this case to [the first-filed district] when full, fair, and complete adjudication of all issues may be had before this court.").  Because the claims brought in Quicken's preemptive suit boil down to anticipatory defenses to the claims brought in this action, this Court can fully adjudicate the complete controversy between the parties.  *See Morgan Drexen*, 979 F. Supp. 2d at 117 ("[w]here a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified.").[17]

*Sixth, and finally*, this Court may take into account the nature of the Preemptive Suit in determining whether it supports application of the first-to-file rule.  Review of that lawsuit does not support application of that rule here.  That suit seeks declaratory relief and injunctive relief relating to the reasons underlying the Government's investigation and decision to pursue this suit, as well as broad declaratory statement that Quicken did not make materially false claims.  That is, Quicken's complaint in essence seeks judicial review of the United States' investigation and its decision to file this FCA action, which is an impermissible attack on matters committed to the Executive Branch's unreviewable prosecutorial discretion.  *See, e.g., N.J. Hosp. Assoc. v.*

---

[17]     Dismissal of the claims in the Preemptive Suite is warranted for a host of reasons that will be described in detail in the United States' motion to dismiss that complaint, including, as noted below, that Quicken's lawsuit is an impermissible attack on Executive Branch discretion. Also, as noted above, the United States intends to file its motion to dismiss, or in the alternative for a transfer, in the EDMI and provide this Court notice of that filing in advance of the Court Hearing scheduled for May 29, 2015.

*United States*, 23 F. Supp. 2d 497, 499-504 (D.N.J. 1998) (dismissing FCA defendant's preemptive declaratory judgment suit, holding "[t]he Justice Department and the Attorney General are in the best position to assess the results of the investigation, as well as the application of agency policy and available resources, to the factual circumstances before them.  It is solely within their discretion whether to prosecute an FCA action.");[18] *Davis v. U.S. Dep't of Health & Human Servs.*, 968 F. Supp. 2d 176, 182 (D.D.C. 2013) (Bates, J.) (dismissing relator's declaratory judgment action, holding that decisions whether to pursue, or not, FCA suits are "presumptively unreviewable").

Accordingly, all of the equitable factors weigh in favor of disregarding Quicken's preemptive suit in determining the most appropriate venue for the instant action.  These same factors, and the preemptive nature of Quicken's suit, also lend no support to Quicken's request for a stay of this case.  *See, e.g., Foreword Magazine, Inc. v. OverDrive, Inc.*, Civ. A. No. 10-1144, 2011 WL 31044, at *4 (W.D. Mich. Jan. 5, 2011) (denying motion to stay in light of first filed case when first filed case was a preemptive strike); *Nike*, 285 F. Supp. 2d at 68.  In sum, this Court should not permit Quicken to delay answering for its alleged fraud on American taxpayers by engaging in procedural tactics plainly disfavored by the courts.

\*    \*    \*

At bottom, Quicken's suit is plainly a preemptive strike.  It should be afforded no deference and, if anything, should factor against Quicken's request for a transfer in order to promote equity and curtail future attempts to game the system with untenable cases that merely

---

[18]     Closely paralleling the Preemptive Suit, the plaintiff in *New Jersey Hospital Association* based its complaint on allegations "that defendants, specifically the Department of Justice . . . are using threats of suit under the False Claims Act and proposed offers of settlement in a coercive manner to resolve disputes between plaintiff's member hospitals and the DOJ regarding overpayment of benefits[.]"  *New Jersey Hosp. Ass'n*, 23 F. Supp. 2d at 499.

serve to crowd judicial dockets.  Furthermore, this court should not reward Quicken by delaying the United States' suit with a stay and instead should send a clear message that preemptive suits are strongly disfavored by denying Quicken's motion in its entirety.

<div align="center">*   *   *</div>

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Quicken's motion to stay or to transfer.  A proposed order is enclosed herewith.

Dated: May 14, 2015
        Washington, DC

<div style="margin-left:40%">

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

VINCENT H. COHEN, JR., D.C. Bar #471489
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division, U.S. Attorney's Office


By:      */s/ Brian P. Hudak*
      BRIAN P. HUDAK
      Assistant United States Attorney
      555 Fourth Street, NW
      Washington, DC 20530
      (202) 252-2549

JAMIE L. MENDELSON
Special Assistant United States Attorney
1225 17th St, Suite 700
Denver, CO 80202
(303) 454-0100

MICHAEL D. GRANSTON
RENÉE BROOKER
SAMUEL J. BUFFONE
CHRISTOPHER R. B. REIMER
JOHN W. BLACK
DANIEL HUGO FRUCHTER
Attorneys, Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(202) 616-2945

*Attorneys for the United States of America*

</div>