IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

QUICKEN LOANS INC.,

        Defendant.

Civil Action No. 1:15-cv-00613-RBW

**HEARING: MAY 29, 2015, 9:30AM**

**QUICKEN LOANS' REPLY TO THE UNITED STATES' (1) RESPONSE TO
ORDER TO SHOW CAUSE AND (2) OPPOSITION TO QUICKEN LOANS'
MOTION TO STAY OR TRANSFER IN LIGHT OF A FIRST-FILED
ACTION PENDING IN THE EASTERN DISTRICT OF MICHIGAN**

Jeffrey B. Morganroth
**MORGANROTH &
MORGANROTH, PLLC**
344 North Old Woodward Avenue
Suite 200
Birmingham, MI 48009
Tel.:  248.864.4000
Fax.:  248.864.4001
jmorganroth@morganrothlaw.com
D.C. Bar No. 421684

Thomas M. Hefferon
**GOODWIN PROCTER LLP**
901 New York Avenue, NW
Washington, DC  20001
Tel.:  202.346.4000
Fax.:  202.346.4444
thefferon@goodwinprocter.com
D.C. Bar No. 461750

*Attorneys for Quicken Loans, Inc.*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 5

I.    THE COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN DISTRICT
OF MICHIGAN. ........................................................................................................ 5

    A.    Under The First-Filed Rule, The Litigation Should Proceed In Detroit. ........................ 5

        1.    The First-Filed Rule Applies Because The Detroit Action Seeks Coercive Relief
And Addresses Additional Issues. .................................................................................. 5

        2.    The Detroit Action Is Not An Improper "Preemptive Strike." ........................................ 9

        3.    If There Is Forum Shopping Going On, It Is By The United States,
Not Quicken Loans. ...................................................................................................... 11

    B.    The Detroit Action Should Proceed Because It Is Broader. ........................................... 13

    C.    The § 1404 Factors Weigh Overwhelmingly In Favor Of Detroit. ................................ 14

        1.    The Private Interest Factors. .......................................................................................... 14

            a.    This District has no substantial connection to the material facts. ............................. 14

            b.    Quicken Loans' chosen forum is the logical one. ................................................... 18

            c.    The United States' claims arose in Michigan. ........................................................ 19

            d.    Detroit is more convenient for the parties and witnesses. ...................................... 19

            e.    Access to evidence favors transfer to Detroit. ....................................................... 21

        2.    The Public Interest Factors. ........................................................................................... 21

II.    ALTERNATIVELY, THIS COURT SHOULD LET JUDGE GOLDSMITH ADDRESS
WHICH COURT SHOULD RESOLVE THE PARTIES' DISPUTES. .............................. 22

CONCLUSION .............................................................................................................. 24

# TABLE OF AUTHORITIES

CASES:                                                                                                    Page

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
   860 F. Supp. 128 (S.D.N.Y. 1994) ..........................................................................................9

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. Sept. 11, 2014) .........................................................................15

*Bader v. Air Line Pilots Ass'n, Int'l*,
   No. 14-cv-575 (TSC), 2014 WL 3883475 (D.D.C. Aug. 8, 2014) ........................ 14-15, 17, 19

*Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n*,
   975 F. Supp. 2d 57 (D.D.C. 2013) .........................................................................................15

*Bryant v. Oxxford Exp., Inc.*,
   181 F. Supp. 2d 1045 (C.D. Cal. 2000) .................................................................................10

*U.S. ex rel. Bukh v. Guldmann, Inc.*,
   No. 11 C 3701, 2014 WL 1647148 (N.D. Ill. Apr. 24, 2014) .................................................12

*Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*,
   No. CIV.A. H-06-1330, 2006 WL 1984627 (S.D. Tex. July 14, 2006) .................................10

*Chaffe McCall, LLP v. World Trade Ctr.*,
   No. 08-4432, 2009 WL 322156 (E.D. La. Feb. 9, 2009) ..........................................................7

*Citigroup Inc. v. City Holding Co.*,
   97 F. Supp. 2d 549 (S.D.N.Y. 2000) ................................................................................ 11-12

*City Antiques, Inc. v. Planned Furniture Promotions, Inc.*,
   No. 3:14-CV-00467-SI, 2014 WL 3955216 (D. Or. Aug. 12, 2014) ......................................10

*Couvrette v. Couvrette*,
   Civ. A. No. 12-2771, 2013 WL 2898531 (S.D. Cal. June 13, 2013) ......................................20

*Davenport v. Hansaworld USA*,
   Civ. A. No. 12-0233, 2013 WL 5406900 (S.D. Miss Sept. 25, 2013) ....................................20

*Drew Techs., Inc. v. Robert Bosch, L.L.C.*,
   No. 11-15068, 2012 WL 314049 (E.D. Mich. Jan. 31, 2012) .................................................22

*EMC Corp. v. Parallel Iron, LLC*,
   914 F. Supp. 2d 125 (D. Mass. 2012) ....................................................................................23

*F.T.C. v. Graco Inc.*,
   No. 11-cv-02239, 2012 WL 3584683 (D.D.C. Jan. 26, 2012) ..........................................19, 21

*FHFA v. First Tenn. Bank N.A.*,
  856 F. Supp. 2d 186 (D.D.C. 2012) (Walton, J.) ........................................................3

*Franklin v. S. Ry. Co.*,
  523 F. Supp. 521 (D.D.C. 1981) .............................................................................15

*Greater Yellowstone Coal v. Bosworth*,
  180 F. Supp. 2d 124 (D.D.C. 2011) ........................................................................18

*Harrison v. Illinois Central R. Co.*,
  Civ. A. No. 08-0748, 2008 WL 6154521 (S.D. Ill. May 28, 2008)........................20

*U.S. ex rel. Holbrook v. Brinks Co.*,
  Civ. No. 11-4732, 2013 WL 4731545 (D.N.J. Sept. 3, 2013) ................................12

*Kmart Corp. v. Key Indus., Inc.*,
  877 F. Supp. 1048 (E.D. Mich. 1994).....................................................................11

*Lentz v. Eli Lilly & Co.*,
  464 F. Supp. 2d 35 (D.D.C. 2006) ..........................................................................15

*Lewis v. National Football League*,
  813 F. Supp. 1 (D.D.C. 1992)...................................................................................8

*New England Ins. Co. v. Barnett*,
  561 F.3d 392 (5th Cir. 2009) ............................................................................ 2, 6-7

*Oceana, Inc. v. Pritzker*,
  No. 13-770 (JEB), 2013 WL 5801755 (D.D.C. 2013)............................................18

*Ontel Prods., Inc. v. Project Strategies Corp.*,
  899 F. Supp. 1144 (S.D.N.Y. 1995)..........................................................................9

*Overton & Sons Tool & Die Co. v. Precision Tool, Die & Mach. Co.*,
  No. 1:13-cv-01302 –TWP-DKL, 2014 U.S. Dist. LEXIS 58451 at *16-17
  (S.D. Ind. Apr. 28, 2014) ..........................................................................................7

*S.E.C. v. Ernst & Young*,
  775 F. Supp. 411 (D.D.C. 1991) .............................................................................17

*Stone & Webster, Inc. v. Georgia Power Co.*,
  779 F.3d 614 (D.C. Cir. 2015) ..................................................................................7

*Synthes, Inc. v. Knapp*,
  978 F. Supp. 2d 450 (E.D. Pa. 2013) ......................................................................12

*TransCanada Power Mktg., Ltd. v. Narragansett Elec. Co.*,
  402 F. Supp. 2d 343 (D. Mass. 2005) ............................................................... 10-11

*United States v. H & R Block*,
    789 F. Supp. 2d 74 (D.D.C. 2011) ....................................................................18

*Veryfine Prods., Inc. v. Phlo Corp.*,
    124 F.Supp.2d 16 (D. Mass. 2000) ..................................................................11

*W. Watersheds Proj. v. Pool*,
    942 F. Supp. 2d 93 (D.D.C. 2013) ...................................................................20

*United States ex rel Westrick v. Second Chance Body Armor, Inc.*,
    771 F. Supp. 2d 42 (D.D.C. 2011) ...............................................................18, 20

### STATUTES:

28 U.S.C. § 1404.............................................................................................. *passim*

### OTHER AUTHORITIES:

J. Gallagher, *Quicken Asks Court to Hear its FHA Cases in Detroit*, Detroit Free
    Press (Apr. 30, 2015),
    http://www.freep.com/story/money/business/michigan/2015/04/30/quicken-
    fha-gilbert-lawsuit-detroit-mortgages/26630729/...................................22

J. Gallagher, *U.S. Sues Quicken Loans Over Allegedly Improper FHA Loans*,
    Detroit Free Press (Apr. 23, 2015)........................................................22

J. Gallagher, *Veteran Judge Lands Case Against Quicken Loans*, Detroit Free
    Press (Apr. 24, 2015),
    http://www.freep.com/story/money/business/michigan/2015/04/24/quicken-
    lawsuit-fha-judge/26314993/ ...............................................................22

J. Reindl, *Feds Object to Moving Quicken Loans Case to Detroit*, Detroit Free
    Press (May 15, 2015), http://www.freep.com/story/money/2015/05/14/feds-
    respond-to-quicken-request-venue-change/27337179/;...........................22

J. Reindl, *Quicken Loans Sues Feds*, Detroit Free Press (Apr. 20, 2015),
    http://www.freep.com/story/money/2015/04/20/quicken-fha-hud-dan-gilbert-
    sues-doj-preemptive/26076247/...........................................................22

J. Reindl, *Gilbert Fires Back at Feds Over Loan Allegations*, Detroit Free Press
    (Apr. 25, 2015),
    http://www.freep.com/story/money/business/2015/04/24/quicken-loans-
    lawsuit-followup/26301171/ ...............................................................22

# INTRODUCTION

On May 4, 2015, this Court ordered the United States to show cause why this case should not be stayed or transferred to the Eastern District of Michigan, where a first-filed action between the parties is already pending.  The United States' response (Dkt. No. 12) fails to establish such cause.  Instead, the response just underscores all of the reasons this case should be transferred, as Quicken Loans has requested in its pending motion to transfer (Dkt. No. 4).  Quicken Loans submits this memorandum in reply to that response and in further support of Quicken Loans' motion.

**This Case Should be Transferred to Detroit.**  The United States' response fails to negate the three separate reasons why the Court should transfer this case to the Eastern District of Michigan.

A.  The First-Filed Rule Favors Detroit.  As Quicken Loans showed in its motion, this case should not proceed here because the Detroit Action was filed first.[1]  The United States' arguments to evade the well-established first-filed rule are meritless.

First, the United States cites a potential exception to the rule where the first case seeks *only* declaratory relief.[2]  But that grossly mischaracterizes the Detroit Action, which does not seek to pre-litigate Quicken Loans' FCA defenses.  To the contrary, the Detroit Action seeks a broad, prospective injunction on several different grounds.  Moreover, both that injunction and the requested declaratory relief cover not only the allegedly-noncompliant loans at issue in this case, but the many thousands of other loans that have been made to date, as well as the loans to be made in the future so long as Quicken Loans participates in the FHA program.  As the largest

---

[1]  *See* Defendant's Memorandum in Support of Its Motion to Stay or Transfer in Light of a First-Filed Action Pending in the Eastern District of Michigan, Dkt. No. 4-1 ("QL Mem.") at 13-16.

[2]  *See* United States' Response to the Court's Order to Show Cause and Memorandum of Points and Authorities in Opposition to Quicken Loans Inc.'s Motion to Stay or Transfer, Dkt. No. 12 ("Opp.") at 30.

FHA lender once again (more than twice as active as the next largest lender in the last quarter), the issues in the Detroit Action are not only vital to Quicken Loans but important to the FHA program generally.  And the Detroit Action involves not just the United States, but other federal defendants as well.  Thus, the first-filed rule fully applies.[3]

Second, the United States asserts that the timing of the Detroit Action shows it to be an improper "preemptive strike."  Opp. at 28-29.  To the contrary, Quicken Loans deferred filing suit while, both reasonably and responsibly, seeking to persuade the United States and the other defendants to honor their contractual and regulatory obligations or, at least, reach a reasonable resolution concerning the parties' disputes.[4]  When it became clear that the defendants had made a final decision to repudiate those obligations, Quicken Loans filed the Detroit Action seeking an injunction compelling the defendants to comply with their obligations for both past *and future* loans.  The United States' real concern seems to be that it did not file suit first, but its disappointment provides no basis for it to evade the first-filed rule.

Finally, the United States contends that the Detroit Action represents forum shopping.  Opp. at 26, 28-29.  That is plainly not so.  Quicken Loans filed suit in the most logical venue, where all of the underwriting decisions, endorsements, and certifications occurred:  in the Eastern District of Michigan.  Moreover, the United States did not say that it would file suit in Washington (Hefferon Decl. ¶ 9), and in fact the United States had not filed its prior adversarial FHA-related FCA lawsuits in Washington.  The United States' decision to countersue in this District does not turn Quicken Loans' logical choice into an impermissible game.  Indeed, as Quicken Loans previously showed, if there has been any forum shopping, it occurred when the

---

[3] *See, e.g.*, *New England Ins. Co. v. Barnett*, 561 F.3d 392, 397 (5th Cir. 2009) (exception to first-filed rule for purely declaratory actions does not apply "[w]hen [the first-filed] action contains any claim for coercive relief").

[4] May 21, 2015 Declaration of Thomas M. Hefferon ("Hefferon Decl.") ¶¶ 3-8.

United States filed this case in a venue with few if any connections to the material facts of this case.  QL Mem. at 19-22.

B.  <u>Detroit is the Broader Action</u>.  Even beyond the first-filed rule, the Detroit Action should proceed because it constitutes the broader action.  The United States asserts that this case can fully address "all issues involving whether Quicken violated the False Claims Act."  Opp. at 31.  As the Detroit Action establishes, however, the parties' dispute is broader than that:  it also includes the ongoing procedures for assessing FHA-insured loans (not just the loans at issue in this lawsuit)—which is particularly important to Quicken Loans because it is the leading FHA lender—and it also includes not just the United States, but also HUD and other government agencies that have previously endorsed Quicken Loans' position.  As such, Detroit is the venue that can provide a comprehensive resolution of the parties' disputes.

C.  <u>The § 1404 Factors Point Strongly to Detroit</u>.  The United States' § 1404 argument rests on its repeated assertion that this case focuses on government employees in D.C.  *See, e.g.*, Opp. at 11-12.  But *every single person identified in the United States' complaint is located in Detroit*.  And all of the alleged FCA violations—namely, making allegedly false statements and loan certifications—occurred in or near Detroit.  Even now, the United States fails, as it must in order to show cause why the case should not be transferred, to identify *any* specific government employees (or even specific types of government employees) located in this District whose testimony will be critical to its claims.  The location of a federal agency's headquarters—which is what the United States repeatedly cites in the venue section of its complaint—is not, standing alone, a material factor in choosing between judicial districts.  *FHFA v. First Tenn. Bank N.A.*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012) (Walton, J.).  And the United States cannot possibly establish that it would be difficult for it to litigate this case in Detroit.

Indeed, the lack of real connections to Washington is underscored by the implausible arguments the United States advances in its show-cause response:

- The United States' argument that this case "focuses on" federal government officials located in Washington is based largely on the fact the FHA's *computer systems are administered* from D.C.  Opp. at 11-12.

- The United States argues that Quicken Loans has "connections" to this District because its CEO meets with D.C. area military families at a professional golf tournament that Quicken Loans sponsors.  Opp. at 19.  Not only is that entirely irrelevant, but the United States' suggestion that Quicken Loans should be shorn of the logical forum for this case—Detroit—because its CEO meets with military families at an event that also raises millions of dollars for charity is nothing short of astonishing.

- The United States claims that Quicken Loans executives engage in "routine[] travel" to this District because they report here when summoned to provide testimony before Congress.  *Id.*

At bottom, this case turns on events that occurred in Detroit, undertaken by people working in Detroit, evidenced by documents that largely are stored in Detroit, involving causes of action that arose in Detroit.  This case should therefore be transferred to Detroit.

**<u>Alternatively, Judge Goldsmith Should Address the Venue Issue.</u>**  If this Court has any doubt whether this case should be transferred, it should stay the case to let Judge Goldsmith address the venue issue.  The United States' response does not even address—much less rebut—the principle, established in extensive case law, that where the choice of venue between two federal districts is in question, the court with the first-filed case is best situated to determine where the parties' dispute will be resolved.  QL Mem. at 13.  In fact, the United States' response discloses that it intends to file a motion in the Detroit Action to dismiss or transfer that case to this Court.  Opp. at 25 n.16.  In light of that impending filing, the Court can stay this action in favor of letting Judge Goldsmith address the venue issue.

## ARGUMENT

I.    **THE COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF MICHIGAN.**

The United States' show-cause response fails to dispel any of the three separate reasons why this case should be transferred to the Eastern District of Michigan:  (A) under the first-filed rule; (B) because the Detroit Action is broader than this one; and (C) based on the balance of factors under § 1404.

A.    **Under The First-Filed Rule, The Litigation Should Proceed In Detroit.**

The United States does not challenge, as it cannot, that "[t]he usual rule in this circuit has been that where two cases . . . are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first."  QL Mem. at 13 (quoting *UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012)).  The question therefore is whether the United States has shown cause that the "usual rule" should be set aside in this case.  It has not.  To the contrary, each of the United States' arguments to evade the first-filed rule is without merit.

1.    **The First-Filed Rule Applies Because The Detroit Action Seeks Coercive Relief And Addresses Additional Issues.**

Citing to cases that dismissed actions seeking *purely* declaratory relief in favor of letting second-filed coercive actions proceed, the United States repeatedly mischaracterizes the Detroit Action as a mere "declaratory judgment action" that simply seeks to "pre-litigate" Quicken Loans' defenses to this FCA case.  Opp. at 26-27, 30.  But those cases are not relevant here, and the United States' argument fails, because the first-filed Detroit Action is nothing like what the United States says it is.

First, the Detroit Action seeks a broad, prospective injunction that would bar the United States as well as the other federal defendants in that case from breaching the contractual and

regulatory obligations of the FHA program.  *See* QL Mem. at 17-18 & Ex. A (Detroit Complaint)

¶¶ 88-118 & Prayer for Relief.[5]  The requested injunction would require those defendants to

assess the merits of each FHA-insured loan on an individual basis before seeking reimbursement

or indemnification.  *Id*.  That injunction would apply not only to the "hundreds" of loans made

between 2007 and 2011 that the United States contends are at issue in this lawsuit, but to all of

the other loans already made by Quicken Loans as well as the loans to be made in the future as

long as Quicken Loans chooses to remain an FHA lender.  *Id*.

That prospective injunction is indisputably of genuine substance, as well as important to

Quicken Loans, because the company is presently the largest-volume FHA lender.  QL Mem. Ex.

A ¶ 50.  Indeed, recent statistics show that in the First Quarter of 2015, Quicken Loans was the

largest FHA lender once again, with total origination volume more than twice the size of the

second-largest lender.  *See* Inside Mortgage Finance, Top FHA Lenders in 2015 (Ex. A hereto).

Many formerly-large FHA lenders, like large national banks, are making many fewer FHA loans.

*Id*. (showing reduction in origination volumes, year-over-year, ranging from 15% to 86% for

institutions including US Bank, Wells Fargo, Bank of America, and J.P. Morgan Chase).  The

issues Quicken Loans has raised in the Detroit Action are real, substantive and important to the

administration of the FHA program, in which Quicken Loans is the most active participant by a

significant margin.

Cases from this Circuit and elsewhere make clear that where the first-filed case seeks

something more than just a declaratory judgment that anticipates a later-filed case, there is no

---

[5] *See* QL Mem. Ex. A, ¶ 107-08 (alleging that mortgage insurance contracts were issued on "tens of thousands of loans" and "Quicken Loans is entitled to a declaratory judgment that Defendants cannot use any sampling . . . to determine whether each individual contract was in compliance with FHA guidelines"); *id.* Prayer for Relief ("WHEREFORE, Plaintiff prays that this Court: . . . (b) Issue an injunction prohibiting Defendants from using any sampling to determine whether any (or how many) of the Subject Loans were properly underwritten and originated in compliance with FHA program requirements and from initiating or pursuing any suit or other proceeding based on or using such sampling, including without limitation any suit under the False Claims Act . . .").

exception to the first-filed rule.  *See, e.g.*, *New England Ins. Co. v. Barnett*, 561 F.3d 392, 397

(5th Cir. 2009) (exception to first-filed rule for purely declaratory actions does not apply "[w]hen

[the first-filed] action contains any claim for coercive relief").[6]  In *Stone & Webster, Inc. v.*

*Georgia Power Co.*, the plaintiff argued that the defendant's separate lawsuit filed in Georgia

"should be disfavored because it was an anticipatory declaratory judgment action."  779 F.3d

614, 617 (D.C. Cir. 2015) (internal quotation marks omitted).  The D.C. Circuit rejected the

argument, observing that the Georgia action sought "coercive" (*i.e.*, not just declaratory) as well

as declaratory relief.  *Id*. at 617-18.  Thus where—as here—both parties seek more than just

declaratory relief against each other, the first-filed rule applies.  *See also Overton & Sons Tool &*

*Die Co. v. Precision Tool, Die & Mach. Co.*, No. 1:13-cv-01302-TWP-DKL, 2014 U.S. Dist.

LEXIS 58451 at *16-17 (S.D. Ind. Apr. 28, 2014) (applying the first-filed rule where "[b]oth

parties filed a coercive action based upon a dispute over who actually breached the contract at

issue").

     Not only does the United States err in mischaracterizing the Detroit Action as seeking

only declaratory relief, it further errs in asserting that the Detroit Action is an effort by Quicken

Loans to "pre-litigate its defenses in this case."  Opp. at 30.  To the contrary, as shown, the scope

of the Detroit Action is substantially broader than this case:  it involves a far broader scope of

FHA loans, it involves multiple federal defendants (including the federal agency that is tasked

with administering the FHA program), and it involves numerous different causes of action.  QL

Mem. Ex. A.  Indeed, although Quicken Loans' opening memorandum demonstrated in detail

---

[6]  This distinction is consistent with the broader rule that while federal courts have "substantial discretion" over cases that seek "only *declaratory relief*," they have a "virtually unflagging obligation" to exercise jurisdiction over a case that "involves a request for *coercive relief* such as an injunction."  *Chaffe McCall, LLP v. World Trade Ctr.*, No. 08-4432, 2009 WL 322156, at *5 (E.D. La. Feb. 9, 2009) (citations omitted).

that the Detroit Action is broader than this one, rather than a flip-side declaratory judgment action (*e.g.*, QL Mem. at 17-18), the United States never disputes that demonstration.

The United States acknowledges that a factor courts consider in determining whether the first-filed rule applies is "whether 'full, fair, and complete adjudication of all issues may be had before [the present] court.'"  Opp. at 27 (citing *Lewis v. National Football League*, 813 F. Supp. 1, 5 (D.D.C. 1992)).  And it then argues that this lawsuit "can provide full, fair, and complete adjudication of all issues involving whether Quicken Loans violated the False Claims Act." Opp. at 31.  But that would not resolve "all issues" between the parties.  To the contrary, the parties' dispute *also* extends to (1) the procedures for assessing the many other loans that have been made as well as loans to be made in the future (that is, the procedures governing the parties' ongoing relationship), (2) not just liability under the FCA, but also issues of reimbursement or indemnification, and (3) not just the United States, but also the other federal agencies.  QL Mem. at 17-18.

Further, the Detroit Action does *not* seek a declaration of non-liability under the False Claims Act, despite the United States' implications to the contrary.  *See* QL Mem. Ex. A.  In particular, while the Detroit Action properly seeks a determination that the loans underwritten by Quicken Loans complied with FHA guidelines and hence overlaps substantially with this case, a number of other factual and legal issues that are part of this case under the False Claims Act, such as those relating to knowledge, causation, and damages, are not raised in the Detroit Action.

In short, the Detroit Action does not try to pre-litigate Quicken Loans' defenses to this action, but instead to resolve broader issues that include the ongoing administration of the FHA program.  As such, the Detroit Action fits squarely into the principle that when a party files suit because it is "genuinely concerned with obtaining a benefit beyond the scope of what the other

party could be expected to bring suit for," that suit must receive the benefits of the first-filed rule. *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1151 (S.D.N.Y. 1995); *see also 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 133 (S.D.N.Y. 1994) (holding that first-filed action was proper where it sought to deter unfair trade tactics that would inhibit the development of its business).

### 2.     The Detroit Action Is Not An Improper "Preemptive Strike."

The United States also argues that the first-filed rule should not apply because the Detroit Action is a bad faith "preemptive strike."  Opp. at 28-32.  But the facts show otherwise.  In light of the inconsistent messages from and actions of the various federal defendants, Quicken Loans (like other lenders) needs clarity as to the ongoing administration of the FHA program.  QL Mem. Ex. A ¶ 21.  Quicken Loans nevertheless reasonably and responsibly deferred filing suit while it sought repeatedly to persuade the United States and the other federal defendants to honor their contractual (and regulatory) obligations by evaluating loans through loan-level analysis (and not sampling) or, at least, to settle their differences with Quicken Loans.  *Id*. Ex. A ¶ 75; *see also* Hefferon Decl. ¶¶ 3-8.  Indeed, those efforts proved at least partially successful: over several months in the last half of 2014, the United States engaged in a loan-level review process with Quicken Loans, in which both parties evaluated the 62 loans the United States had identified contained an alleged "defect" and shared those findings, in writing, and discussed ten specific loans in a joint meeting on September 23, 2014.  Hefferon Decl. ¶ 4.[7]  Of course, as a strong business partner of the FHA, Quicken Loans did not want to file its lawsuit unnecessarily. But when it became evident that the government would not comply with the contractual and regulatory obligations of the FHA program and assess Quicken Loans' compliance based on a

---

[7]   For this reason, the United States' assertion that "Quicken Loans waited two years" to challenge the use of sampling is wrong-headed. Opp. at 28.  The parties' discussions never foreclosed loan-level reviews and, in fact, the parties engaged in such a review for every loan the United States deemed "defective," less than 6 months ago.

loan-level review, and would not reach a reasonable settlement, Quicken Loans sued to secure compliance with the loan-level review requirement and to clarify that that process will be applied to resolve any questions about the quality and compliance of Quicken Loans' FHA loans.  QL Mem. Ex. A; Hefferon Decl. ¶ 8.

Where, as here, a party had a "preexisting motive" for filing suit—that is, a motive other than to beat the other party to the courthouse door—courts decline to find a suit "anticipatory" or "preemptive" for purposes of evading the first-filed rule.  *See, e.g.*, *City Antiques, Inc. v. Planned Furniture Promotions, Inc.*, No. 3:14-CV-00467-SI, 2014 WL 3955216, at *5 (D. Or. Aug. 12, 2014) (holding anticipatory suit exception inapplicable because plaintiff had independent basis and "preexisting motive" for its claims); *Bryant v. Oxxford Exp., Inc.*, 181 F. Supp. 2d 1045, 1049 (C.D. Cal. 2000) (holding there was no anticipatory filing and first-filed rule applies where plaintiff had a "preexisting motive" for going to court); *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, No. CIV.A. H-06-1330, 2006 WL 1984627, at *4-5 (S.D. Tex. July 14, 2006) (holding party did not engage in improper anticipatory filing when it filed suit in reasonable forum after parties could not agree over obligations).  Here, Quicken Loans plainly had a preexisting motive to file suit.  As such, the Detroit Action is not a "preemptive strike" that could justify sidestepping the first-filed rule.[8]

The United States' reliance (Opp. at 29) on purported settlement discussions to evade the first-filed rule is both legally and factually misplaced.  As a legal matter, "where two sophisticated parties are negotiating at arm's length, in the absence of any proof of misrepresentation or bad faith . . . it [is] inappropriate to deny the plaintiff the benefit of the first-filed rule."  *Trans-*

---

[8]  The United States' argument that Quicken Loans knew when the United States was going to sue because it had threatened to sue (Opp. at 28) is based on the history of negotiations where the United States gave only vague statements about its intentions and was threatening for weeks to sue (Opp. Ex. 14, ¶¶ 9-10 (Reimer Decl.)), and is meritless because Quicken Loans' timing was based on the United States' final decision not to honor its obligations to evaluate loan compliance based on loan-level reviews.  QL Mem. Ex A ¶¶ 2, 6, 19, 23, 24.

*Canada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343, 349-50 (D. Mass. 2005) (citation omitted) (holding existence of settlement negotiations was insufficient to constitute a "special circumstance" to deny application of the first-filed rule).[9]  The United States does *not* contend that Quicken Loans misrepresented that it would not file suit in connection with any supposed settlement discussions, or that it engaged in discussions for no purpose but to forestall suit so it could sue first.

Moreover, as a factual matter, the parties were not "in the midst of good faith settlement discussions" when Quicken Loans filed suit, as the United States inaccurately asserts.  Opp. at 29.  At the time Quicken Loans filed suit, the United States had made non-negotiable demands in terms of both money and "admissions."  Hefferon Decl. ¶ 7.  Quicken Loans did not respond to these unacceptable demands by suggesting there was anything more to talk about.  *Id*.  The United States' assertion that the parties were in the midst of good-faith settlement discussions assumes those demands were acceptable to Quicken Loans, which they obviously were not.[10]

### 3. If There Is Forum Shopping Going On, It Is By The United States, Not Quicken Loans.

Finally, the United States argues that the Detroit Action is not entitled to first-filed status because Quicken Loans engaged in forum shopping.  That is factually inaccurate as well.  Detroit is the logical venue for this litigation, having by far the greatest connection to the operative facts, witnesses, and evidence.  Courts reject arguments that the first-filed action constitutes forum-

---

[9]  *See also Veryfine Prods., Inc. v. Phlo Corp.*, 124 F.Supp.2d 16, 23 (D. Mass. 2000) ("When the negotiations are long-term and ongoing and there is no false implication that a party will refrain from litigation during those negotiations, the first-filed presumption may remain intact."); *Kmart Corp. v. Key Indus., Inc.*, 877 F. Supp. 1048, 1053-55 (E.D. Mich. 1994) (key consideration is whether the plaintiff in the first-filed case "misled the defendant into believing that their dispute could be resolved amicably so that the plaintiff could win the race to the courthouse").

[10]  The United States' efforts to denigrate Quicken Loans' conduct are not only inaccurate but perplexing.  By the FHA's own reporting, Quicken Loans has been, and is currently, ranked as the highest quality (lowest default rate) lender of any FHA originator.  QL Mem. Ex. A ¶¶ 8-9.  Moreover, in addition to the public benefits of home-ownership made possible by Quicken Loans' FHA lending program, the government stands to make billions of dollars in profits from the insurance premiums paid on the $40 billion worth of FHA insured loans originated by Quicken Loans.  *Id*.

shopping, and hence that the first-filed rule should not apply, where there is a "sufficient nexus" between the action and the first-filed forum.  *See*, *e.g.*, *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 560 (S.D.N.Y. 2000) (refusing to dismiss first-filed action because there was a "sufficient nexus" where plaintiff's headquarters were in, and corporate decisions and some of the allegedly infringing activity took place in, the first-filed jurisdiction); *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 457-58 (E.D. Pa. 2013) (transferring second-filed action because first-filer filed action in jurisdiction of the "epicenter of the conduct at issue", *i.e.*, the state where the first-filer lived, worked, and worked for the second-filer).  Here, Detroit not only has a "sufficient nexus" to the parties' dispute, but is the "epicenter" of the "conduct at issue."  QL Mem. at 23-26.[11]

The United States' accusation of forum shopping also fails for the additional reason that Quicken Loans had no notice that the United States intended to sue in this forum.  Hefferon Decl. ¶ 9.  One would have thought the government would sue where all of the witnesses cited in its complaint were—in the Eastern District of Michigan.

Indeed, if any forum shopping has occurred, it is by the United States.  *See* QL Mem. at 14-16 (summarizing absence of substantial connection to this District).  The United States' resort to entirely implausible arguments to link this case to Washington further underscores this point, as explained in the section below discussing the Section 1404 factors.  As for its choice of this District, the United States weakly points out that it filed two other False Claims Act lawsuits like this one in this District.  Opp. at 10 n.5.  But the United States admits, as it must, that "both cases were settled at the time of filing as consent judgments."  *Id.*  Indeed, in each case, the lawsuit

---

[11]  *See also U.S. ex rel. Holbrook v. Brinks Co.*, Civ. No. 11-4732, 2013 WL 4731545, at *4 (D.N.J. Sept. 3, 2013) (False Claims Act claim arises in the state where defendant allegedly perpetrates the scheme to defraud the government); *U.S. ex rel. Bukh v. Guldmann, Inc.*, No. 11 C 3701, 2014 WL 1647148, at *10-11 (N.D. Ill. Apr. 24, 2014) (same).

was filed only as a means to contemporaneously submit the previously-negotiated consent judgment.[12]  Those two cases are thus entirely irrelevant, both because venue was stipulated and because venue was inconsequential, since there would be no witnesses, no discovery, and no trial.  That the United States has to resort to these two examples as reasons why this suit belongs here speaks volumes as to why it does not.

For all these reasons, the United States cannot escape the first-filed rule, and hence this case should be transferred to the Eastern District of Michigan.

## B.      The Detroit Action Should Proceed Because It Is Broader.

The United States also fails to address, much less disprove, Quicken Loans' showing that the parties' dispute should be resolved in the Eastern District of Michigan because the Detroit Action is the broader case and hence must proceed in order to resolve the parties' entire dispute. QL Mem. at 16-19.  The United States thus does not dispute the extensive caselaw holding that where overlapping cases are pending, the broader one should proceed.  QL Mem. at 16-17, 18-19.  Nor does the United States challenge that the Detroit Action is broader than this one in multiple respects, including the scope of both the claims and the parties.  QL Mem. at 17-18.

Instead, as noted above, the United States merely asserts in passing that this Court can fully adjudicate "whether Quicken violated the False Claims Act."  Opp. at 31.  But the parties' dispute is broader than that.  Specifically, as shown above, the parties' dispute *also* includes the processes that are being used and that will be used by the federal government—including HUD, assuming the DOJ allows that agency to administer the FHA program without improper inter-ference—to assess all of the FHA loans made by Quicken Loans, as well as loans to be certified in the future.  *See supra* pages 5-9.  Furthermore, the inconsistent positions taken by the various

---

[12]  *See United States v. Bank of Am. Corp.*, No. 1:12-cv-00361-RMC (D.D.C.) (docket excerpt showing Complaint filed simultaneously with Consent Judgment) (Ex. B hereto); *United States v. SunTrust Mortg., Inc.*, No. 1:14-cv-1028 (D.D.C.) (same) (Ex. C hereto).

federal defendants with respect to the parties' dispute (until recently, the FHA had expressly affirmed in a Federal Register Notice that it would evaluate loan quality by *actually looking at each loan*, rather than by sampling, *see* QL Mem. Ex. A ¶¶ 58-76) only underscores the need to have all of the relevant federal entities before the Court.  Thus the Detroit Action must proceed to comprehensively resolve the parties' dispute.

In short, in addition to the heavy presumption favoring Detroit as the venue of the first-filed case, the Detroit Action is the broader of the two pending cases, and hence Detroit is the forum in which the parties' entire dispute should be adjudicated.

### C.   The § 1404 Factors Weigh Overwhelmingly In Favor Of Detroit.

Even apart from the existence of the Detroit Action, the balance of factors under § 1404 weighs heavily in favor of transferring this case to Detroit.

#### 1.   The Private Interest Factors

##### a.   *This District has no substantial connection to the material facts.*

The United States asserts that its decision to sue here is justified by the "intimate involve-ment of Government employees and officials in this District" in the material events.  Opp. at 10. That assertion is conclusively refuted at the outset by the fact that *every single person identified in the United States' complaint is located in Detroit*.  QL Mem. at 3-4, 27.  The United States simply has no response to that dispositive point.

Indeed, upon examination, the United States' assertion that the presence of government employees in this District justifies retaining the case here dissolves into air.  In response to the order to show cause, the United States has the obligation to *prove* this assertion:  by settled law, conclusory assertions about potential witnesses are legally irrelevant under § 1404.  *See, e.g.*, *Bader v. Air Line Pilots Ass'n, Int'l*, No. 14-cv-575 (TSC), 2014 WL 3883475, at *4 (D.D.C.

Aug. 8, 2014) (granting motion to transfer and rejecting similar conclusory assertion because "Plaintiffs allege that '[m]ost of the . . .employees that Plaintiffs anticipate will be witnesses are in the District of Columbia or travel here regularly', but do not identify or give examples of any individual or category of witnesses they may wish to call").[13]

Despite this obligation, the United States' showing is woefully insufficient. Not a single person—not one—is identified by name as someone who had the supposed "intimate involvement" in the conduct at issue. Nor are intimately-involved persons located in D.C. identified even by category. Instead, the United States just vaguely asserts that it intends to use witnesses from Washington D.C., as well as from Philadelphia and Atlanta. Opp. at 13-14. But it does not identify *any* of those hypothetical witnesses, much less the relevance of any such testimony. Either there are no such individuals or, for strategic reasons, the United States has chosen not to try to identify them. Whichever the case, the United States has not met its obligation specifically to identify the relevant likely witnesses, and thus has *not* shown cause why this case should not be transferred to Detroit. *Bader*, 2014 WL 3883475 at *3.[14]

The United States also points to the fact that Quicken Loans' electronic filings were "received" at the FHA's headquarters. Opp. at 11-12. But the United States does not, and

---

[13]  *See also, e.g.*, *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. Sept. 11, 2014) (ordering trial court to grant defendant's motion transfer where, among other things, plaintiff did not identify specific witnesses located in the forum); *Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n*, 975 F. Supp. 2d 57, 62 (D.D.C. 2013) (granting motion to transfer and placing little weight on plaintiff's unidentified witnesses "since neither the complaint nor [plaintiff's] Opposition clearly identifies the purpose and relevance of each witness's testimony") (citing *Clark v. Sprint Spectrum L.P.*, No. C 10-03625 SI,  2010 WL 5173872, at *4 (N.D. Cal. Dec. 15, 2010) (granting a motion to transfer where plaintiff offered only "speculative and general predictions about the identity of potential witnesses")); *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 37 (D.D.C. 2006) (granting motion to transfer and rejecting plaintiff's assertion that an "army" of unidentified potential witnesses resided in D.C.); *Franklin v. S. Ry. Co.*, 523 F. Supp. 521, 522–23 (D.D.C. 1981) (granting motion to transfer where plaintiff alleged that most witnesses lived in D.C. but failed to identify them or specify how many there were).

[14]  The United States' "HUD Declaration" merely identifies the entire structure of officials within FHA headquarters. It does not purport to establish which if any of those officials has personal knowledge of facts material to this case or is likely to be a material witness in this case, much less the content of any such testimony. Opp. Ex. 5 (HUD Decl.).

cannot, rebut the numerous cases (including FCA cases) holding that the ministerial receipt and processing of submissions creates no meaningful nexus to this District for purposes of § 1404. QL Mem. at 20-21.  And the reason for that rule is fully applicable here:  while the United States asserts that FHA's computer systems are "administered by staff located in Washington" (Opp. at 12), it provides no basis to think that those information technology employees will be material witnesses in this case.[15]

Unable to establish any meaningful connection between the District and its affirmative claims, the United States argues that Quicken Loans, as part of its defense, may depose some witnesses in Washington.  Opp. at 13.  The United States seeks to infer Quicken Loans' future discovery from the *Wells Fargo* FCA lawsuit, in which the defendants purportedly took certain depositions here.  *Id.*[16]  But the United States provides no basis to conclude that the reasons for those purported depositions are present in this case; it does not explain how the two cases overlap factually and does not even identify the government witnesses who gave depositions in this District (making it impossible for Quicken Loans to explain their probable irrelevance to this case).  From the operative complaint in *Wells Fargo*, it appears that case is different and, for example, does not involve challenges to appraisal and compensation practices like the case at

---

[15]  The United States also asserts that the funds for FHA insurance claims are paid by the U.S. Treasury located in Washington (Opp. at 12 n.6), but offers no explanation of how this fact is relevant to this case.

[16] The United States bases its assertions on Mr. Reimer's declaration, but his statements concerning *Wells Fargo* are incompetent:  he is not counsel of record in that case, and his declaration improperly is expressly made based not only on personal knowledge but also on "information that I learned from others participating in the Government's joint investigation of this matter."  Opp. Ex. 14 ¶ 4 (Reimer Decl.).  Furthermore, although the United States asserts in text (Opp. at 13) that 25 of 32 depositions of FHA witnesses in the *Wells Fargo* action took or will take place in Washington D.C., it admits in a footnote (Opp. at 13 n.7) that nine of the 25 actually traveled to D.C. for the depositions.  So fewer than half of the deposed FHA witnesses were actually from the Washington D.C. area.

bar.[17]  Again, it was the United States' burden to make its showing, and merely saying "some

FHA employees were deposed in another case" proves nothing.

   The United States also speculates that Quicken Loans will depose HUD witnesses from

Washington because, during the United States' investigation, Quicken Loans employees "iden-

tified contacts" they had with HUD officials here.  Opp. at 13.  As the largest FHA lender, it

would surprise no one that Quicken Loans had "contacts" with FHA officials in D.C.  But the

United States provides no evidence as to what if any testimony relevant to this particular case

those employees may have—and, absent such specificity, the existence of those employees is

irrelevant under § 1404.  *See Bader*, 2014 WL 3883475, at *3, and cases cited in n.13 *supra*.[18]

   Furthermore, the United States does not even try to distinguish the numerous cases, from

this Court and others, transferring actions brought by the government that similarly lacked a

close connection to the forum.  QL Mem. at 20-21.  Instead, the United States merely asserts that

the connection here is more than just the location of HUD's headquarters.  Opp. at 14 n.8.  In

fact, however, the venue allegations in the United States' complaint are expressly based on the

mere fact that FHA's "headquarters" are in the District of Columba.  Compl. ¶¶ 20, 21, 22, 23,

24.  As this Court held in granting a motion to transfer in similar circumstances in *S.E.C. v. Ernst*

*& Young*, the government must show more than that it received materials in Washington, for

otherwise "every organization across the country that is required to file documents with an

---

[17] According to the operative complaint, the *Wells Fargo* appears to be focused on (1) alleged underwriting errors and (2) a purported failure to self-report loans, apparently, in large measure, during a period long before the time at issue in this case.  *See* QL Mem. Ex. B (*United States v. Wells Fargo Bank, N.A.*, No. 1:12-cv-07527-JMF, First Amended Complaint, ¶¶ 1-5 (S.D.N.Y. Dec. 14, 2012)).

[18] Thus, Quicken Loans may ultimately seek testimony from government witnesses based in Washington, D.C., in any of the four FHA Homeownership Centers (in Philadelphia, Atlanta, Denver, and Santa Ana, California), or elsewhere, but as no specific D.C.-based witnesses have been identified, that possibility is of no relevance at this juncture.

agency in Washington could be forced to travel here to defend against as yet unproven charges."
775 F. Supp. 411, 415 (D.D.C. 1991).

In contrast to the cases on which Quicken Loans relies, the cases cited by the United

States are plainly inapposite.  In *United States ex rel Westrick v. Second Chance Body Armor,*

*Inc.*, thousands of the allegedly defective products at issue were shipped to the District of

Columbia and the parties did not allege that "most of the relevant conduct" occurred another

District.  771 F. Supp. 2d 42, 48 (D.D.C. 2011).  And in *United States v. H & R Block*, part of the

defendant's material conduct (namely, lobbying activities) occurred within D.C. and the

defendant's "key motivation" for entering into the challenged transaction related to activities in

Washington.  789 F. Supp. 2d 74, 79 (D.D.C. 2011).  Here, by contrast, all of Quicken Loans'

alleged conduct took place in or near Detroit.  And in the only other cases cited by the United

States, the government was the *defendant* and was trying to have lawsuits that the plaintiffs

lawsuits had filed in Washington transferred to other courts.  *See Greater Yellowstone Coal v.*

*Bosworth*, 180 F. Supp. 2d 124, 128-29 (D.D.C. 2011); *Oceana, Inc. v. Pritzker*, No. 13-770

(JEB), 2013 WL 5801755, at *4 (D.D.C. 2013).  Those cases have no bearing here, where the

United States has filed suit against a Detroit-based company over actions taken in or near

Detroit.

### b.    *Quicken Loans' chosen forum is the logical one.*

Unlike the contortions that the United States attempts to justify litigating in Washington,

the reasons to litigate this case in Detroit are clear and compelling:  it is the location where all of

the allegedly wrongful underwriting decisions, direct endorsements, and certifications were

made, it is the place where all of the witnesses identified in the United States' complaint are

located, it is where all of the underwriters approving the loans in the relevant period (2007-2011)

worked and it is where all of Quicken Loans' documents evidencing the disputed transactions are

housed.[19]  And because Detroit is the logical forum for this lawsuit, Quicken Loans' preference

for that forum is entitled to substantial weight under § 1404.

**c.**   ***The United States' claims arose in Michigan.***

This Court has held that a claim arises for purposes of § 1404 "in the location where the

corporate decisions underlying those claims were made, or where the most significant events

giving rise to the claims" occurred.  *F.T.C. v. Graco Inc.*, No. 11-cv-02239, 2012 WL 3584683,

at *5 (D.D.C. Jan. 26, 2012) (citation omitted).[20]  The United States does not and cannot dispute

that Detroit is "the location where the corporate decisions underlying [the FCA] claims were

made."  Nor can the United States seriously dispute that Detroit is "where most of the significant

events giving rise to the claims" occurred.  Indeed, the United States makes no effort to rebut the

cases holding that an FCA claim arises in the place where the defendant allegedly perpetrates the

fraudulent scheme.  QL Mem. at 23-24.  Here, that is Detroit.  *Id.*

**d.**   ***Detroit is more convenient for the parties and witnesses.***

The United States' argument that D.C. is more convenient "for government witnesses"

(Opp. at 17-18) fails because, as already shown, the United States has not identified any such

witnesses.  *See Bader*, 2014 WL 3883475, at *3, and cases cited in n.13 *supra*.[21]  The United

States also submits a "heat map" to suggest that Quicken Loans' FHA-insured properties are

located nationwide.  Although that map in fact suggests that there are more loans in the Eastern

---

[19] April 19, 2015 Declaration of Amika Thornton ("Thornton Decl.") ¶¶ 5-16, 19-20; May 21, 2015 Supplemental
Declaration of Amika Thornton ("Supp. Thornton Decl.") ¶¶ 4-7; *see also* QL Mem. at 23-24.

[20] Astonishingly, the United States' Opposition not only selectively quotes just a portion of this sentence from
*Graco*, it then falsely accuses Quicken Loans of "selectively and misleadingly quot[ing] *Graco Inc.* by omitting the
above passage."  Opp. at 16 n.11.  In fact, *Graco's* full holding, including the passage selectively quoted by the
United States, was accurately set forth in Quicken Loans' opening memorandum.  QL Mem. at 23.

[21] Setting aside the issue of convenience to the theoretical government witnesses, the government cannot possibly
(and does not) contend that it would be inconvenient *for the United States* to litigate a case in Detroit.  Indeed, the
United States is apparently content for Quicken Loans (in Detroit) to originate more FHA insured loans than any
other lender, generating billions of dollars' worth of premium payments for the FHA insurance fund.  QL Mem. Ex.
A ¶¶ 1, 3.

19

District of Michigan than in Washington, D.C., it is irrelevant because the events that are most material to the lawsuit here occurred where the underwriting and certification decisions were made (which is Detroit), not where the insured properties are located.[22]

The United States also asserts that Quicken Loans officials periodically travel to D.C. on business.  Opp. at 19.  But the United States' contention that the parties' dispute should be adjudicated here, rather than in the logical forum (Detroit), because Quicken Loans' CEO met with D.C.-area military families at a charitable golf tournament (*id.*) is not just frivolous, but so misguided as to defy belief.  Almost as nonsensical is the United States' suggestion that because Quicken Loans officials provide Congressional testimony when requested to do so (Opp. at 19), D.C. would be a convenient forum for them to testify in this case.  Doubtless many government officials also travel on business, often to Detroit.  That does not dictate the Section 1404 analysis.[23]

Finally, the United States observes that the FCA provides for nationwide service of subpoenas.  Opp. at 20.  But even though all witnesses in an FCA action may be *available* to testify in either district, courts still give substantial preference to the district that will be more *convenient* for witnesses.  *See Second Chance Body Armor*, 771 F. Supp. 2d at 49 (citing *Montgomery v. STG Intern., Inc.*, 532 F. Supp. 2d 29, 33 & n.5 (D.D.C. 2008)).  Because Detroit is

---

[22] The United States also notes in passing that one of Quicken Loans' outside counsel is located in Washington. Opp. at 18.  The location of defense counsel is accorded little if any weight and is particularly irrelevant where, as here, the defendant moves for transfer.  *W. Watersheds Proj. v. Pool*, 942 F. Supp. 2d 93, 100 (D.D.C. 2013).

[23]  The cases cited by the United States involving travel (Opp. at 19) do not help its case.  In *Davenport v. Hansaworld USA*, the court held that the defendant's travel to the forum was relevant for the purposes of evaluating *personal jurisdiction*.  Civ. A. No. 12-0233, 2013 WL 5406900, at *7 (S.D. Miss Sept. 25, 2013).  In *Harrison v. Illinois Central R. Co.*, the defendant "routinely travel[ed] throughout the [forum] as part of his job" and the transfer was only to the adjacent district.  Civ. A. No. 08-0748, 2008 WL 615452, at *2 (S.D. Ill. May 28, 2008).  And in *Couvrette v. Couvrette*, the court merely recited the plaintiff's contention regarding the defendant's frequent travels without relying on that point in its ruling.  Civ. A. No. 12-2771, 2013 WL 2898531, at *4 (S.D. Cal. June 13, 2013).

more convenient for the material witnesses identified by the parties, this factor strongly supports transfer to Detroit.

**e.**     ***Access to evidence favors transfer to Detroit.***

The government contends that "the location of Quicken's documents offers no reason to transfer this matter" because the records are largely electronic.  Opp. at 21.  But as this Court said in *Graco*, while this factor is less important in the age of electronic discovery, technology does not "obviate the access to evidence inquiry entirely."  2012 WL 3284683, at *7 (finding ease of access to proof weighed in favor of transfer to location of documents) (citing *In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010) ("[I]f the need arises to refer to original documents or evidence in the litigation, [the district where the movant is headquartered] would prove more convenient.")).[24]  This factor also therefore points in favor of transfer to Detroit, where Quicken Loans' documents are located.

**2.**     **The Public Interest Factors.**

The United States agrees that the first public interest factor—familiarity with the law— does not favor either forum.  Opp. at 22.

As for the second factor—relative congestion—the United States misunderstands the relevant point.  Although the median filing-to-disposition times are similar in both courts, the median filing-to-*trial* period is much shorter in Detroit (29.3 months) than here (49.7 months). QL Mem. at 29-30.  That is the relevant statistic, because there is every reason to think that this case will not be resolved short of trial (absent a dispositive motion).  While a negotiated resolution is always possible, both the breakdown in prior discussions and the existence of broader

---

[24] The United States also accuses Quicken Loans of ignoring the location of the government's documents "on computer systems administered by officials in the District of Columbia."  Opp. at 22.  But the United States has not even submitted evidence as to where those systems are actually located.  In any event, most of the relevant documents are Quicken Loans', not the United States'.

issues involving the ongoing administration of the FHA program (as raised in the Detroit Action) counsel that trial is a likely end-point for the litigation.

On the third factor—local interest—there plainly is greater local interest in this matter in Detroit than in D.C., notwithstanding the United States' argument to the contrary (Opp. at 23). Although Quicken Loans makes loans covering properties across the country, it and the bulk of its employees are located in Detroit, creating a substantially greater local interest in this lawsuit there. QL Mem. at 31.[25]

Finally, lacking any public interest factors in its favor, the United States rehashes its argument that the Detroit Action reflects an improper preemptive strike. Opp. at 23-24. As shown above, the Detroit Action is no such thing. And even beyond that, the United States' argument has no bearing on the factors that apply under § 1404. QL Mem. at 29.

## II.   ALTERNATIVELY, THIS COURT SHOULD LET JUDGE GOLDSMITH ADDRESS WHICH COURT SHOULD RESOLVE THE PARTIES' DISPUTES.

If the Court has any doubt whether this case should be transferred to the Eastern District of Michigan, it should stay the case to let Judge Goldsmith address where the parties' disputes should be adjudicated. Quicken Loans' motion cited extensive case law holding that "principles of comity and judicial economy militate towards allowing [the court with the first-filed case to] decide where [the] dispute should be litigated." *Drew Techs., Inc. v. Robert Bosch, L.L.C.*, No.

---

[25] For example, while the Washington Post has not published any articles over the past month reporting on the parties' disputes, the Detroit Free Press has published many. *See, e.g.*, J. Reindl, *Feds Object to Moving Quicken Loans Case to Detroit*, Detroit Free Press (May 15, 2015), http://www.freep.com/story/money/2015/05/14/feds-respond-to-quicken-request-venue-change/27337179/; J. Gallagher, *Quicken Asks Court to Hear its FHA Cases in Detroit*, Detroit Free Press (Apr. 30, 2015), http://www.freep.com/story/money/business/michigan/2015/04/30/quicken-fha-gilbert-lawsuit-detroit-mortgages/26630729/; J. Reindl, *Gilbert Fires Back at Feds Over Loan Allegations*, Detroit Free Press (Apr. 25, 2015), http://www.freep.com/story/money/business/2015/04/24/quicken-loans-lawsuit-followup/26301171/; J. Gallagher, *Veteran Judge Lands Case Against Quicken Loans*, Detroit Free Press (Apr. 24, 2015), http://www.freep.com/story/money/business/michigan/2015/04/24/quicken-lawsuit-fha-judge/26314993/; J. Gallagher, *U.S. Sues Quicken Loans Over Allegedly Improper FHA Loans*, Detroit Free Press (Apr. 23, 2015); J. Reindl, *Quicken Loans Sues Feds*, Detroit Free Press (Apr. 20, 2015), http://www.freep.com/story/money/2015/04/20/quicken-fha-hud-dan-gilbert-sues-doj-preemptive/26076247/.

11-15068, 2012 WL 314049, at *7 (E.D. Mich. Jan. 31, 2012); QL Mem. at 11-12.  The United States never even mentions, much less seeks to rebut, that rule or its application here.  Thus, if this Court believes there is any genuine issue as to the more appropriate forum for the parties to resolve their disputes, this Court should temporarily stay this case to allow Judge Goldsmith to address that venue issue.

Indeed, the United States' show-cause response *affirmatively underlines* the reasons why, if the Court has any doubt about transferring this case to Detroit, it should temporarily stay it. The United States' response discloses that, prior to May 29, 2015, it and the other defendants in the Detroit Action will file a motion seeking either to dismiss that case or to transfer it to this District.  Opp. at 25 n.16.  Thus, unless this Court determines that the appropriate venue is clear and transfers this case to Detroit, the government would have *both* this Court and Judge Goldsmith addressing the same venue issue in parallel.  That is precisely the highly-undesirable situation that courts avoid by applying the rule that the court with the first-filed case should address where the parties' disputes should be resolved.  *See EMC Corp. v. Parallel Iron*, *LLC*, 914 F. Supp. 2d 125, 129 (D. Mass. 2012) ("The first-to-file rule has generally been interpreted to dictate not only which forum is appropriate, but also which forum should *decide* which forum is appropriate.  Courts in nearly every circuit have held that the court in which the second action was filed should defer to courts in the first-filed action.") (citing cases); *see also* QL Mem. at 11-13.

## CONCLUSION

For all of the foregoing reasons, the United States has failed to show cause, and the Court should transfer this case to the Eastern District of Michigan or, in the alternative, stay it.

Dated:  May 21, 2015

Respectfully submitted,

QUICKEN LOANS INC.

By its attorneys,

/s/Jeffrey B. Morganroth
Jeffrey B. Morganroth
**MORGANROTH &
MORGANROTH, PLLC**
344 North Old Woodward Avenue
Suite 200
Birmingham, MI 48009
Tel.:  248.864.4000
Fax.:  248.864.4001
jmorganroth@morganrothlaw.com
D.C. Bar No. 421684

Thomas M. Hefferon
**GOODWIN PROCTER LLP**
901 New York Avenue, NW
Washington, DC  20001
Tel.:  202.346.4000
Fax.:  202.346.4444
thefferon@goodwinprocter.com
D.C. Bar No. 461750

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 21, 2015, a copy of the foregoing was served by electronic means via the Court's CM/ECF System on all counsel registered to receive electronic notices.


<u>/s/ Jeffrey B. Morganroth</u>
Jeffrey B. Morganroth