# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| QUICKEN LOANS, INC., | No. 2:15-cv-11408-MAG-RSW |
| Plaintiff, | |
| | District Judge: |
| v. | MARK A. GOLDSMITH |
| | |
| UNITED STATES OF AMERICA, *et al.*, | Magistrate Judge: |
| | R. STEVEN WHALEN |
| Defendants. | |

## DEFENDANTS' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, TRANSFER

Defendants United States of America, United States Department of Housing and Urban Development ("HUD"), Julián Castro, in his official capacity as HUD Secretary, United States Department of Housing and Urban Development Office of Inspector General, David A. Montoya, in his official capacity as Inspector General for HUD, United States Department of Justice, and Loretta E. Lynch, in her official capacity as Attorney General,[1] hereby move to dismiss Plaintiff's Complaint or, in the alternative, transfer this case to the United States District Court for the District of Columbia. The grounds for dismissal or, in the alternative, transfer are set forth in the accompanying memorandum of law.

---

[1]   Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Loretta E. Lynch is automatically substituted for her predecessor Eric H. Holder.

Pursuant to Local Rule 7.1(a), the undersigned counsel for Defendants certifies that counsel personally spoke to opposing counsel for Plaintiff, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

Defendants respectfully request that the Court hear oral argument on this motion, to the extent the Court believes oral argument may aid its decision.

Dated: May 27, 2015

LOCAL COUNSEL

BARBARA L. MCQUADE
United States Attorney

PETER A. CAPLAN
Assistant U.S. Attorney
211 W. Fort Street, Ste. 2001
Detroit, MI 48226
(313) 226-9784
P30643
Email: peter.caplan@usdoj.gov

Respectfully submitted,

U.S. DEPARTMENT OF JUSTICE

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

  */s/ Tamra T. Moore*
TAMRA T. MOORE
ARJUN GARG
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Telephone: (202) 514-8095
Facsimile: (202) 616-8460
Emails: tamra.moore@usdoj.gov
             arjun.garg@usdoj.gov

*Counsel for Defendants*

2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| QUICKEN LOANS, INC., | No. 2:15-cv-11408-MAG-RSW |
| Plaintiff, |  |
|  | District Judge: |
| v. | MARK A. GOLDSMITH |
| UNITED STATES OF AMERICA, *et al.*, | Magistrate Judge: |
| Defendants. | R. STEVEN WHALEN |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER

### ISSUES PRESENTED

(1)     Does the Administrative Procedure Act provide a cause of action to preemptively challenge the government's discretionary decision to bring a False Claims Act enforcement action?

(2)     Should the Court decline to exercise its discretion to entertain Quicken's claim for declaratory relief, which seeks to divert the government's enforcement action to Quicken's preferred forum and requests that this Court review each one of 246,000 loans that Quicken made from 2007 to 2011?

(3)     Has Quicken identified a waiver of sovereign immunity that creates jurisdiction for this Court to resolve Quicken's claim asserting "non-breach" of its contracts with the United States Department of Housing and Urban Development?

(4)     Has Quicken stated a claim that the government deprived it of a cognizable property interest without due process?

(5)     If the Court does not dismiss Quicken's claims entirely, should the Court transfer any remaining claims to the United States District Court for the District of Columbia, where the government's False Claims Act enforcement lawsuit against Quicken is now pending?

## <u>PRINCIPAL CONTROLLING AUTHORITIES</u>

1)    *Parke, Davis & Co. v. Califano*, 564 F.2d 1200 (6th Cir. 1977)

2)    *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004)

3)    *FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980)

4)    *AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004)

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

BACKGROUND .................................................................................................1

    A.    The Government's Enforcement Authority. ..............................1

    B.    The Federal Housing Administration's Direct
        Endorsement Lender Program. ...................................................3

    C.    The False Claims Act Investigation of Quicken.......................4

    D.    Quicken's Preemptive Lawsuit. ..................................................5

STANDARD OF REVIEW ..................................................................................7

ARGUMENT .......................................................................................................8

  I.    Quicken's Preemptive Lawsuit Impermissibly Attacks the
       Government's Prosecutorial Discretion. ......................................8

  II.   Quicken Cannot Invoke APA Review. .......................................10

    A.    Quicken Does Not Challenge Agency Action As Defined
        in the APA.................................................................................11

    B.    Quicken Challenges Activities Committed to Agency
        Discretion by Law....................................................................13

    C.    Quicken Does Not Challenge Final Agency Action for
        Which There Is No Other Adequate Remedy in a Court.........17

  III.  The Court Should Decline to Grant Quicken's Request for
       Declaratory Relief. ......................................................................22

    A.    Declaratory Judgment Would Not Resolve This
        Controversy, Despite the Exceptionally Broad
        Declaration That Quicken Seeks..............................................24

iv

B.      This Declaratory Judgment Action Serves No Useful
        Purpose in Clarifying Quicken's Legal Duties. ........................26

C.      Quicken's Preemptive Declaratory Judgment Action Is
        an Improper Attempt to Secure Its Desired Forum. .................28

D.      The United States' Enforcement Suit Offers a Superior
        Remedy. .....................................................................31

IV.     This Court Lacks Jurisdiction to Resolve Quicken's Non-
        Breach of Contract Claim. ....................................................32

V.      Quicken's Due Process Claim Fails as a Matter of Law ....................34

VI.     The Court Should Transfer Any Claims That Are Not
        Dismissed. .....................................................................38

CONCLUSION .....................................................................40

## **INTRODUCTION**

Plaintiff Quicken Loans, Inc. ("Quicken") invites this Court to pioneer a dramatic expansion of judicial review of prosecutorial activity.  No matter how Quicken couches its claim—as a violation of the Administrative Procedure Act ("APA"), a "non-breach" of contract claim, or a denial of due process—its grievance boils down to dissatisfaction with the government's prosecutorial discretion in relation to Quicken's lending practices.  If the Court could entertain this case, then any would-be defendant faced with a government investigation that it dislikes or a settlement demand that it rejects could raise a pre-filing challenge to the government's anticipated suit.  This is not the law.  Quicken's proper recourse is to mount its defense in the government's enforcement suit, not to spawn meritless preemptive litigation in this Court in a bid to shunt the dispute to Quicken's preferred forum.  Quicken's lawsuit warrants dismissal in its entirety. Alternatively, the Court should transfer Quicken's suit to the United States District Court for the District of Columbia, where the government's enforcement action against Quicken is now pending.

## **BACKGROUND**

### A.     **The Government's Enforcement Authority.**

Congress enacted the Inspector General Act of 1978, 5 U.S.C. app. 3 § 2, in order to, among other things, establish "independent and objective units . . . to

1

conduct and supervise audits and investigations relating to the programs and operations of" their respective agencies. As relevant here, Congress charged the Office of Inspector General for the United States Department of Housing and Urban Development ("HUD-OIG") with preventing fraud and abuse within HUD's programs and operations. *See* 5 U.S.C. app. 3 § 2. To that end, HUD-OIG may institute an investigation "'relating to the administration of the programs and operations of [HUD]' if 'in the judgment of the Inspector General,' such investigation is 'necessary or desirable.'" *Inspector Gen. v. Banner Plumbing Supply Co.*, 34 F. Supp. 2d 682, 685 (N.D. Ill. 1998) (quoting 5 U.S.C. app. 3 § 6(a)(2)). Courts have interpreted this provision to grant HUD-OIG broad discretion to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Banner Plumbing Co.*, 34 F. Supp. 2d at 685 (quotation omitted).

To assist HUD-OIG in carrying out its mission, the Inspector General Act authorizes HUD-OIG to have access to records which relate to HUD programs and operations and to subpoena documents which might reasonably contain information relevant to the investigation. 5 U.S.C. app. 3 §§ 6(a)(2),(4). HUD-OIG's investigatory authority extends both to recipients of federal funding and

HUD itself. *Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 18 (D.D.C. 2013).

In the event that HUD-OIG's investigation reveals non-compliance with a HUD program or potential fraudulent activity, including potential liability under the False Claims Act, 31 U.S.C. § 3729, the Inspector General Act directs HUD-OIG to report its findings "expeditiously to the Attorney General [of the United States Department of Justice ("DOJ")]." *Id.* § 4(d). It is then within the Attorney General's discretion to bring an action under the False Claims Act ("FCA") against the regulated entity. *See United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 607 (S.D.N.Y. 2013). "The only official authorized to bring an FCA claim is the Attorney General (or his designee within DOJ)." *Id.* (citing 31 U.S.C. § 3730 and 28 C.F.R. § 0.45(d)).

**B.    The Federal Housing Administration's Direct Endorsement Lender Program.**

The Federal Housing Administration ("FHA") is a component of HUD that insures mortgages and administers several mortgage insurance programs. As a mortgage insurer, FHA "agrees to protect mortgage lenders against the risk of loss caused by borrowers' non-payment, as authorized by the National Housing Act," 12 U.S.C. § 1701 *et seq.* ("NHA"). *Penobscot Indian Nation v. U.S. Dep't of Hous. & Urban Dev.*, 539 F. Supp. 2d 40, 44 (D.D.C. 2008). One program through

which FHA insures home mortgages is the Direct Endorsement ("DE") Lender program. In the DE Lender Program, FHA authorizes certain lenders to evaluate the credit risk of potential borrowers, underwrite mortgage loans, and certify those loans for FHA mortgage insurance without prior HUD review or approval. *See* 12 U.S.C. § 1715z-21. In underwriting the mortgage loan, the lender must determine whether the borrower and the mortgage loan meet HUD's requirements for FHA insurance and whether "the proposed mortgage is eligible for insurance under the applicable program regulations." 24 C.F.R. § 203.5(a).

To this end, Congress granted FHA broad authority to establish the DE lender program origination and underwriting requirements and the responsibilities of DE lenders. *See*, *e.g.*, 24 C.F.R. Part 203.

### C.     The False Claims Act Investigation of Quicken.

Quicken participates in FHA's DE lender program. Compl., ¶¶ 44, 50.[2] In 2012, HUD-OIG and DOJ began investigating Quicken's participation in FHA's DE program for possible violations of the False Claims Act, 31 U.S.C. § 3729 ("FCA"). *Id.* ¶¶ 15-17, 56, 74. Pursuant to its authority under the Inspector General Act, HUD-OIG issued subpoenas for information and documents related to FHA loans originated by Quicken from mid-2007 through December 31, 2011.

---

[2]     Factual allegations in the Complaint are presumed to be true solely for purposes of this motion.

*See id.* ¶ 56. In response to the government's subpoenas, Quicken "gathered, reviewed, and produced" a subset of records related to its origination and underwriting of FHA mortgage loans and turned over some loan-specific information on a subset of the relevant loans. *Id.* HUD, HUD-OIG, and DOJ ("the government investigative team") cooperatively investigated Quicken's compliance with FHA rules and regulations. As part of its investigation of Quicken, the government investigative team performed a loan-level analysis on sample loans that Quicken provided in response to HUD-OIG's subpoena, and determined that Quicken had violated the FCA in these cases. *Id.* ¶15. Based in part on its statistical analysis of Quicken's loan files, the government investigative team determined that Quicken had violated the FCA in a much larger universe of cases. *Id.* ¶¶ 15-17.

### D.   Quicken's Preemptive Lawsuit.

Although the government and Quicken attempted to resolve the government's False Claims Act claims outside of litigation, the parties were unable to do so. *Id.* ¶ 75. In anticipation of an imminent enforcement action, Quicken filed this action on April 17, 2015, alleging that "in the face of the DOJ and HUD-OIG's repeated threats of an improper and heavy-handed False Claims Act lawsuit . . . Quicken Loans had no other option than to file this lawsuit." Compl. ¶ 23.

The Complaint contains three counts for alleged violations of the APA, one count seeking a "Non-Breach of Contract" declaration, and a fifth count for alleged violation of due process. *See* Compl. ¶¶ 88-118. Quicken "seeks two basic rulings from the Court:" (1) a declaratory judgment that the methodology used by the government to determine that Quicken failed to comply with its legal and contractual obligations is improper along with an injunction preventing the government from using this methodology to review Quicken's 2007-2011 loans in the future; and (2) a declaratory judgment that the approximately 246,000 "loans Quicken Loans made between 2007-2011 in fact were originated properly by Quicken Loans in accordance with the applicable FHA guidelines and program requirements, and pose no undue risk to the FHA insurance fund." *Id.* ¶ 25, *prayer for relief*. Quicken's requested relief thus amounts to an assertion of its claimed defenses to the enforcement action it anticipated.

On April 23, 2015, the United States filed an FCA enforcement action against Quicken in the United States District Court for the District of Columbia, alleging that, between September 1, 2007, and December 31, 2011, Quicken caused hundreds of improperly underwritten loans to be endorsed for FHA insurance, resulting in millions of dollars in losses to HUD. *See United States of America v. Quicken Loans Inc.*, No. 1:15-cv-613-RBW (D.D.C.), ECF No. 1, ¶¶ 1,

3, 14.[3]  The United States contends that Quicken "knowingly approved loans that violated FHA rules while falsely certifying compliance with those rules" in violation of the False Claims Act.  *Id.* ¶ 2.  The United States seeks treble damages and civil penalties under the False Claims Act and compensatory damages for common law breach of fiduciary duty and negligence.  *Id. prayer for relief*.

On April 29, 2015, after the United States filed its enforcement suit, Quicken moved to stay the United States' action or transfer it from the District of Columbia to the Eastern District of Michigan.  *See United States of America v. Quicken Loans Inc.*, No. 1:15-cv-613-RBW (D.D.C.), ECF No. 4.  The United States opposed that motion, *see id.*, ECF No. 12, which remains pending at the time of this filing.[4]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires this Court to dismiss an action where it lacks subject matter jurisdiction to grant the relief requested.  "Federal courts are courts of limited jurisdiction," *United States v. Glover*, 242

---

[3]  This Court can properly consider developments in the United States District Court for the District of Columbia in evaluating this motion to dismiss because "it is well-settled that '[f]ederal courts may take judicial notice of proceedings in other courts of record.'"  *Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)).

[4]  On an expedited schedule, the parties have fully briefed Quicken's motion to transfer the District of Columbia federal action to this venue.  The District Court for the District of Columbia has set hearing on that motion for May 29, 2015.

F.3d 333, 335 (6th Cir. 2001), and "[i]t is to be presumed that a cause lies outside this [limited] jurisdiction." *Metro Hydroelec. Co. v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2009) (internal quotation marks and citation omitted). To avoid dismissal under Rule 12(b)(1), Quicken bears the burden of proving that this Court has subject matter jurisdiction over each of its claims. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

To survive a Rule 12(b)(6) challenge, "[a] complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim." *James v. Fed. Home Loan Corp.*, Civ. No. 13-CV-13029, 2014 WL 4773648 at *3 (E.D. Mich. Sept. 24, 2014) (internal citation omitted). For each of Quicken's claims, dismissal is required where, even accepting all well-pled factual allegations as true, the Complaint fails to allege a "'plausible claim for relief.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

## ARGUMENT

### I. Quicken's Preemptive Lawsuit Impermissibly Attacks the Government's Prosecutorial Discretion.

Black-letter principles of prosecutorial discretion preclude Quicken's proposal that this Court preemptively review the government's enforcement efforts.

8

"[I]t has never been held that the hand of the government must be stayed until the courts have an opportunity to determine whether the government is justified in instituting suit in the courts." *Parke, Davis & Co. v. Califano*, 564 F.2d 1200, 1205 (6th Cir. 1977) (quoting *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599 (1950)) (concluding that "the district court had no jurisdiction to review the decision of the FDA to initiate enforcement actions" in federal court). "Choosing whether and how to enforce a statute is the quintessential type of action committed to an agency's absolute discretion" and "[s]uch decisions are presumptively unreviewable." *Better Markets, Inc. v. DOJ*, __ F.3d __, 2015 WL 1246104, at *4 (D.D.C. Mar. 18, 2015) (internal quotation marks and citation omitted). Agencies "have this latitude because they are designated by statute as the President's delegate to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. Const., art. II, § 3).

"[C]ourts [are] properly hesitant to examine the decision whether to prosecute" because "the decision to prosecute is particularly ill-suited to judicial review" and "not readily susceptible to the kind of analysis the courts are competent to undertake." *Wayte v. United States*, 470 U.S. 598, 607-08 (1985). "The presumption of regularity supports [agencies'] prosecutorial decisions and, in

9

the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Armstrong*, 517 U.S. at 464 (quotation and alteration omitted).

Quicken's suit turns prosecutorial discretion on its head by challenging the genesis of a government enforcement suit through a separate preemptive lawsuit, rather than simply raising its defenses in the enforcement suit itself. Indeed, with this action, Quicken invites this Court to open the floodgates to preemptive suits, such as this one. As explained in detail below, the Court should decline Quicken's invitation given the defects contained in the particular causes of action that Quicken has pled.

## II. Quicken Cannot Invoke APA Review.

"[T]he Administrative Procedure Act does not provide judicial review for everything done by an administrative agency." *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004) (quoting *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948)); *accord Mullaj v. Napolitano*, No. 12-14309, 2013 WL 2397390, at *4 (E.D. Mich. May 31, 2013) ("The court does not have jurisdiction to review every action or inaction taken by an administrative agency."). "The principal purpose of the APA['s] limitations . . . is to protect agencies from undue judicial interference with their lawful discretion, and to avoid

judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 66 (2004) ("*SUWA*"). Entertaining Quicken's APA claims would transgress the APA's limitations, with precisely the consequences warned of by the Supreme Court.

**A.    Quicken Does Not Challenge Agency Action As Defined in the APA.**

As one of the APA's limitations, the statute allows judicial review only of "agency action." *See SUWA*, 542 U.S. at 62; 5 U.S.C. §§ 702, 704. The APA defines "agency action" as a discrete subset of agency activities. Specifically, "agency action" under the APA means "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 701(b)(2); 5 U.S.C. § 551(13). The terms "rule," "order," "license," "sanction," and "relief" are in turn also defined by statute. *See* 5 U.S.C. §§ 551(4), (6), (8), (10), (11). In this case, Quicken "do[es] not challenge *agency action* as it is defined in the APA." *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 679 (6th Cir. 2007) (emphasis in original).

The activities challenged here differ fundamentally from the enumerated types of "agency action" subject to APA review. "[T]he filing of a civil action does not fit within the APA's definition of agency action: it is not a rule, order,

license, sanction, form of relief, or failure to act." *City of Oakland v. Holder*, 901 F. Supp. 2d 1188, 1195 (N.D. Cal. 2013), *appeal docketed*. Concomitantly, any settlement demand by the United States also is not "agency action" under the APA. "Litigation decisions are not agency decisions that can be reviewed under the APA." *Tucker v. United States*, No. 2:12CV409DAK, 2013 WL 4498897, at *5 (D. Utah Aug. 19, 2013). Because Quicken does not challenge "agency action" as defined by the APA, its APA claims require dismissal.

"The limitation to discrete agency action" as the basis for an APA challenge "precludes the kind of broad programmatic attack" that Quicken attempts here. *SUWA*, 542 U.S. at 64. Quicken's grievance is with the enforcement scheme Congress has created, wherein the United States, through HUD-OIG and DOJ, has authority to investigate and prosecute wrongdoing related to HUD programs. *See, e.g.*, Compl. ¶ 12. Indeed, Quicken openly admits it is conducting a programmatic attack. *See, e.g.*, *id.* ¶ 21 ("Defendants' actions of treating any suspected non-compliance with FHA guidelines as a false claim . . . [are] likely to damage the entire FHA program.").

This lawsuit is not an appropriate vehicle to resolve Quicken's programmatic attack on the enforcement scheme created by Congress. Quicken "cannot seek *wholesale* improvement of this program by court decree, rather than

in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *SUWA*, 542 U.S. at 64 (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990)) (emphasis in original). Because "[t]he prospect of pervasive oversight by federal courts" over the enforcement program of DOJ and HUD-OIG "is not contemplated by the APA," the Court should dismiss Quicken's APA claims. *SUWA*, 542 U.S. at 67.

## B. Quicken Challenges Activities Committed to Agency Discretion by Law.

Judicial review under the APA is not available where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "An agency action is committed to agency discretion by law if the statute does not provide 'a meaningful standard against which to judge the agency's exercise of discretion.'" *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1127 (6th Cir. 1996) (quoting *Heckler v. Chaney*, 470 U.S. 821, 828 (1985)). "A meaningful standard does not exist where the applicable law is so broadly drawn that the court has no standard or substantive priorities against which to measure an agency's discretion." *Madison-Hughes*, 80 F.3d at 1127; *see also id.* at 1130 ("[T]he exercise of the discretionary powers of an agency are not subject to judicial review in the absence of clear guidelines."). Moreover, "courts cannot apply" the APA "to specific decisions committed to agency discretion even where Congress has provided a general

13

objective for an agency to pursue." *Sheldon v. Vilsack*, 538 F. App'x 644, 651 (6th Cir. 2013) (interpreting *SUWA*, 542 U.S. at 65-66).

The Supreme Court has, in particular, "defined the exception, 'committed to agency discretion,' to include cases involving prosecutorial discretion." *Diebold v. United States*, 947 F.2d 787, 790 (6th Cir. 1991) (citing *Chaney*, 470 U.S. 821). The activities at issue here fall squarely within prosecutorial discretion committed to DOJ and HUD-OIG by the False Claims Act and the Inspector General Act, respectively.

Under the False Claims Act, "[i]f the Attorney General finds that a person has violated or is violating [the False Claims Act], the Attorney General *may* bring a civil action . . . against the person." 31 U.S.C. § 3730(a) (emphasis added). "The terms of the FCA place the decision to file suit against a party found to have violated the Act solely within the discretion of the Justice Department." *N.J. Hosp. Ass'n v. United States*, 23 F. Supp. 2d 497, 501 (D.N.J. 1998) (dismissing APA challenge); *accord Davis v. HHS*, 968 F. Supp. 2d 176, 183 (D.D.C. 2013) (dismissing APA challenge because False Claims Act "gives the Attorney General discretion over whether to bring a civil action against a person"). As part and parcel of this prosecutorial discretion, the statute provides no guidance as to what settlement terms the Attorney General may offer in lieu of bringing a case. *See*

14

*Energy Transp. Grp., Inc. v. Skinner*, 752 F. Supp. 1, 13 (D.D.C. 1990) ("[T]he decision to settle litigation . . . to which the United States is a party is . . . not subject to judicial review . . . [b]ecause there are no standards by which the Court could evaluate the DOJ's exercise of discretion.").

The Attorney General's prosecutorial discretion extends to the decision to bring civil actions under the False Claims Act. "In both civil and criminal cases, courts have long acknowledged that the Attorney General's authority to control the course of the federal government's litigation is presumptively immune from judicial review." *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C. Cir. 1995). Courts defer to the Executive's enforcement decisions because "[t]he Justice Department and the Attorney General are in the best position to assess the results of the investigation, as well as the application of agency policy and available resources, to the factual circumstances before them." *N.J. Hosp. Ass'n*, 23 F. Supp. 2d at 502. It is for the government's attorneys to consider "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte*, 470 U.S. at 607.

And under the Inspector General Act, HUD-OIG "is authorized . . . to make such investigations and reports relating to the administration of the programs and

15

operations of [HUD] as are, *in the judgment of the Inspector General*, necessary or desirable." 5 U.S.C. App. 3 § 6(a)(2) (emphasis added). "By the very use of the word 'judgment,' this section expressly leaves any investigation by the IG to her discretion." *Temple Univ. of Commonwealth Sys. of Higher Educ. ex rel. Temple Univ. Clinical Facility Practice Plans v. Brown*, No. CIV. A. 00-CV-1063, 2001 WL 185535, at *8 (E.D. Pa. Feb. 23, 2001). Moreover, "[t]he structure of the sentence . . . leaves to the IG determination of what is 'necessary or desirable.'" *Id*. Accordingly, "the language and structure of § 6(a)(2) of the Inspector General Act indicate that Congress intended to afford the IG enforcement discretion." *Id.* (rejecting judicial review of challenged Inspector General decisions under APA).

The broad prosecutorial discretion granted to DOJ and HUD-OIG precludes APA review of the activities Quicken challenges. The False Claims Act and the Inspector General Act provide the Court with no meaningful standard by which to judge the agencies' exercise of discretion in pursuing Quicken's alleged wrongdoing. The statutes "can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Chaney*, 470 U.S. at 830.

Accordingly, even if there were "agency actions" at issue in this case, those actions are committed to agency discretion by the False Claims Act and the Inspector General Act. Quicken's APA challenge thus fails.

16

### C. Quicken Does Not Challenge Final Agency Action for Which There Is No Other Adequate Remedy in a Court.

Under the APA, "federal courts may review two types of agency actions: '[1] Agency action made reviewable by statute and [2] final agency action for which there is no other adequate remedy in a court.'" *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 638 (6th Cir. 2004) (quoting 5 U.S.C. § 704). Because no other statute provides for judicial review of the DOJ and HUD-OIG activities challenged in this case, APA review is available only on the basis of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Quicken's claims do not pass this threshold, because a very important arbiter—a federal court—stands between the government's activities and any legal effect on Quicken.

As a condition "for agency action to be 'final' . . . the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Air Brake*, 357 F.3d at 638 (quotation omitted). "An agency's determination of 'rights or obligations' generally stems from an agency action that is directly binding on the party seeking review, such as an administrative adjudication . . . or legislative rulemaking, both of which did not happen here." *Air Brake*, 357 F.3d at 641.

17

The government's initiation of an enforcement suit does not in itself determine Quicken's rights or obligations, or occasion legal consequences. Rather, "those determinations will flow from the Court's and jury's findings and decisions, not a decision by the DOJ." *City of Oakland*, 901 F. Supp. 2d at 1195 (holding that DOJ's "filing of a civil forfeiture complaint does not meet the criteria for finality" because "filing the complaint did not determine any rights or obligations and has not resulted in any legal consequences"); *accord NAACP v. Meese*, 615 F. Supp. 200, 203 (D.D.C. 1985) (holding that Attorney General's "acts alone cannot and will not deny rights or create legal obligations or relationships" because "[o]nly the courts to which the Attorney General's motions are addressed have the power to take any of these steps, and it is these courts, not the Attorney General, which take final action"). Quicken does not and could not plead that the challenged activities have compelled any change in its ongoing activity; Quicken has retained freedom to reject settlement terms, defend itself in litigation, and continue making FHA loans according to the same underwriting obligations that have applied previously. The government's filing of an enforcement suit merely lodges allegations, and the government still bears the burden of proving them in order to create legal consequences. *Cf. Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 496 (6th Cir. 2014) ("An agency action is not final if it 'does not of itself adversely affect

18

complainant but only affects his rights adversely on the contingency of future administrative action.'") (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)).

Supreme Court precedent confirms the absence of final agency action here. In *FTC v. Standard Oil Co. of California*, Standard Oil sought judicial review under the APA of averments by the Federal Trade Commission ("FTC"), in a pending administrative complaint, that FTC had reason to believe that Standard Oil was violating the law. *See* 449 U.S. 232, 234-35 (1980). Refusing APA review, the Supreme Court held there was no final agency action because the FTC's administrative complaint was "a determination only that adjudicatory proceedings will commence" and "had no legal force or practical effect upon [Standard Oil's] daily business other than disruptions that accompany any major litigation." *Id.* at 241, 243. Irrespective of whether "the burden of responding to [FTC's] charges . . . is substantial, it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *Id*. at 242.

The Supreme Court further stated that "pragmatic considerations counsel against the conclusion that [FTC's] issuance of the complaint was 'final agency action.'" *Standard Oil*, 449 U.S. at 243. Emphasizing that "[j]udicial review" of agency enforcement action "should not be a means of turning prosecutor into

defendant before adjudication concludes," the Supreme Court observed that "the effect of the judicial review sought by [Standard Oil] is likely to be interference with the proper functioning of the agency and a burden for the courts." *Id*. at 242-43. Allowing Standard Oil to misuse the APA to gain "immediate judicial review would serve neither efficiency nor enforcement" because such a challenge "would delay resolution of the ultimate question whether the [law] was violated" by Standard Oil. *Id*.

The principles articulated by the Supreme Court in *Standard Oil* demonstrate that Quicken does not challenge final agency action in this case. An investigation, an unaccepted settlement demand, and the filing of a civil suit impose no legal effects on Quicken. Any business impact on Quicken associated with having to defend against the United States' enforcement activity does not give rise to APA review. "Initiating an enforcement proceeding against a company . . . may have a devastating effect on the company's business, but that does not make the agency's action final." *Air Brake*, 357 F.3d at 645; *see also id.* ("[A]dverse economic effects accompany many forms of indisputably non-final government action."). Pragmatically, it "would serve neither efficiency nor enforcement," *Standard Oil*, 449 U.S. at 243, to allow Quicken to combat the United States' efforts through a preemptive APA suit.

Indeed, the APA itself precludes Quicken's approach, because Quicken has an "other adequate remedy in a court" simply by defending against the government's enforcement suit.  5 U.S.C. § 704.  It would be "an abuse of discretion" by this Court "to enjoin the [agencies] in the circumstances of this case where [a] pending enforcement action[]" in the U.S. District Court for the District of Columbia "provide[s] an opportunity for a full hearing before a court."  *Parke*, *Davis & Co.*, 564 F.2d at 1206 (finding that "Parke Davis had an adequate remedy, and the district court erred in holding that it did not"); *see also Meese*, 615 F. Supp. at 203 ("Plaintiffs . . . almost by definition . . . have an adequate remedy in a court, that is, the remedy of opposing the Attorney General's motions in the court in which he files his papers.").  Indeed, the APA expressly contemplates that any review of the agency's enforcement decision will be had in the enforcement action itself.  *See* 5 U.S.C. § 703 ("Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.").

Courts accordingly have refused APA review in similar collateral challenges to False Claims Act enforcement.  *See N.J. Hosp. Ass'n*, 23 F. Supp. 2d at 501 (refusing APA review because "plaintiff's members do have an adequate remedy in a court—the ability and opportunity to raise a defense to an FCA action by the

21

DOJ"); *Greater New York Hosp. Ass'n v. United States*, No. 98 Civ. 2741 (RLC), 1999 WL 1021561, at *8 (S.D.N.Y. 1999) (refusing APA review where plaintiffs had "adequate legal remedies available to them other than APA claims . . . by (1) refusing to settle to avoid FCA prosecution; (2) presenting their defenses to a False Claims lawsuit; and (3) winning that lawsuit") (quotation and alteration omitted).

Thus, even if Quicken were challenging "agency action," and even if such action were not committed to agency discretion by law, Quicken still has not shown finality and in any event has another adequate remedy in a court. Quicken's APA claims accordingly must be dismissed.[5]

## III. The Court Should Decline to Grant Quicken's Request for Declaratory Relief.

Quicken seeks two items of declaratory relief through this lawsuit, *see* Compl., *prayer for relief*, and thus invokes the Declaratory Judgment Act, 28 U.S.C. § 2201, as a basis for this Court's jurisdiction. *See* Compl. ¶ 37. But the Declaratory Judgment Act is an enabling statute and does not alone confer jurisdiction on this Court. *See Severe Records, LLC v. Rich*, 658 F.3d 571, 580

---

[5]     As Quicken's Complaint alleges, HUD's letter to the company stated that the agency was temporarily suspending its review of Quicken's loans under HUD's quality assurance program. To the extent that Quicken challenges HUD's letter under the APA, this claim also fails because the letter is not final agency action under the statute. *See Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 944 & n.6 (D.C. Cir. 2012).

(6th Cir. 2011). Rather, this Court must "determine whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law." *Id.* (internal quotation marks and citation omitted). Thus, this Court must determine "whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court." *Id.* The answer to that question is "no." As explained above, Quicken's APA claims warrant dismissal. And as set forth below, so too do Quicken's non-breach of contract and due process claims.

Even if these claims somehow withstood scrutiny, the Court should decline to exercise its discretion to grant Quicken's claims for declaratory relief. The Declaratory Judgment Act provides, in part: "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). As denoted by the word "may" in the statute, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)).

23

In this case, the Court should decline to entertain Quicken's declaratory judgment action. The Sixth Circuit "has adopted a five-factor test to determine when a district court should exercise jurisdiction over a declaratory judgment:

    (1)   whether the judgment would settle the controversy;

    (2)   whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

    (3)   whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;

    (4)   whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

    (5)   whether there is an alternative remedy that is better or more effective."

*AmSouth*, 386 F.3d at 785 (quotation omitted). An analysis of these factors demonstrates that the Court should decline to exercise jurisdiction here.[6]

### A.    Declaratory Judgment Would Not Resolve This Controversy, Despite the Exceptionally Broad Declaration That Quicken Seeks.

Quicken's requested declaratory relief concerns the roughly 246,000 "FHA loans that Quicken Loans made . . . from mid-2007 . . . until December 31, 2011," which Quicken refers to as the "Subject Loans." Compl. ¶¶ 27, 56. One of the declarations Quicken seeks is "that each Subject Loan was properly underwritten

---

[6]    The fourth factor is not implicated here and therefore is not analyzed below.

and originated by Quicken Loans in compliance with FHA program requirements, and that any variance from those standards is immaterial and does not pose an undue risk to the Fund so as to require indemnification." *Id.*, *prayer for relief*. In other words, Quicken asks this Court to undertake an individual review of each of nearly 250,000 loans.[7]

Although theoretically Quicken's staggering request might resolve the controversy over Quicken's liability to the United States for the Subject Loans, it is not likely to do so. Even assuming that the Court could eventually manage to work its way through all the loans, the controversy would be resolved only if the Court found for Quicken on each and every one. For any one or more of the Subject Loans where this Court rejects Quicken's requested declaration, a controversy will remain. As to such loans, the government would still need to prove liability under either the False Claims Act or the common law. *See* Exhibit A (United States' Complaint) at ¶¶ 203-18, *prayer for relief*. There is thus a significant likelihood that, despite the exceptionally broad relief Quicken seeks, the resulting declaration will not fully resolve this controversy.

---

[7]     Oddly, in requesting this relief, Quicken appears to be asking this Court to substitute itself for HUD's administrative expertise and discretion in the operation of HUD's quality assurance program, established under 24 C.F.R. Part 203. *See* 24 C.F.R. § 203.255(g). Yet elsewhere in its Complaint, Quicken praises HUD's administration of this same program, *see* Compl., ¶¶ 50-57, a program that in any event has nothing to do with the False Claims Act.

Quicken also seeks a declaration "that Defendants cannot use any sampling to determine whether any (or how many) of the Subject Loans were properly underwritten and originated in compliance with FHA program requirements." Compl., *prayer for relief*. This requested declaration, even if granted, would not resolve the controversy over Quicken's liability to the United States for the Subject Loans. Regardless of whether sampling is used, according to Quicken's own allegations, the United States has reviewed and identified individual loans for which it contends Quicken bears liability. *See* Compl. ¶¶ 73, 77. Quicken's requested declaration about sampling would not resolve any dispute as to such loans, and therefore, this factor favors declining to exercise jurisdiction over Quicken's request for declaratory relief.

### B. This Declaratory Judgment Action Serves No Useful Purpose in Clarifying Quicken's Legal Duties.

"The 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm a coercive [enforcement] action is aimed at redressing." *AmSouth*, 386 F.3d at 786. Quicken's requested declaratory relief, however, expressly concerns past harm— its liability arising from "Subject Loans" made from 2007 to 2011—rather than application to loans Quicken may make in the future. *See* Compl. ¶ 27, *prayer for relief*. By the nature of Quicken's own Complaint, "[t]his is not a situation in

26

which a declaratory plaintiff will suffer injury unless legal relations are clarified." *AmSouth*, 386 F.3d at 786. Rather, "[a]t the time [Quicken] filed its declaratory judgment action, it merely suffered the uncertainty of awaiting suit on past behavior, which in and of itself is not sufficient for the invocation of the federal power to issue a declaratory judgment." *Ford Motor Co. v. D.H.S.*, No. 05-73860, 2006 WL 2457521, at *7 (E.D. Mich. Aug. 23, 2006) (declining jurisdiction) (internal quotation marks and citation omitted). "This factor weighs heavily in favor of dismissing the declaratory judgment suit" where, as here, the "only 'useful purpose'" the declaratory judgment "could serve is an ultimate determination of liability on an already-accrued damages claim." *AmSouth*, 386 F.3d at 786.

Moreover, "[i]n this circuit, the existence of a coercive action is important to any determination that a declaratory action would serve no useful purpose." *Ford*, 2006 WL 2457521, at *8. "Where a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified." *AmSouth*, 386 F.3d at 787. In this situation, Quicken's appropriate remedy is to raise its defenses within the government's coercive enforcement suit, not litigate them preemptively through this collateral action. *See id.* at 786 ("Normally, when a putative tortfeasor

27

sues an injured party for a declaration on nonliability, courts will decline to hear the action in favor of a subsequently-filed coercive action by the 'natural plaintiff.'").

### C.      Quicken's Preemptive Declaratory Judgment Action Is an Improper Attempt to Secure Its Desired Forum.

"[F]ederal courts frown upon declaratory judgment actions brought for procedural fencing purposes." *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 522 (6th Cir. 2000). In particular, "[c]ourts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *AmSouth*, 386 F.3d at 788. "[W]here a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum—a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *Id.*

Sound policy considerations underscore the propriety of dismissing the claims for declaratory relief in these circumstances. "Allowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit." *Id.*; *accord NGS*, 218

28

F.3d at 523 ("[A] rule permitting the action could frustrate a plaintiff's choice of forum and encourage forum shopping, races to the courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of judicial process to harass an opponent in litigation.").

Here, "[i]t seems clear that [Quicken] filed" this declaratory action "not to resolve issues of liability that were hindering [its] normal behavior, but instead to gain procedural advantage." *AmSouth*, 386 F.3d at 790. Quicken itself alleges that the government has been investigating Quicken "over the past three years," but during that time "Quicken Loans continued to make tens of thousands" of FHA loans and it remains "the largest lender of [FHA] insured loans in the United States today." *Id.* ¶¶ 1, 6, 57. Only after the government advised that "a lawsuit against the company will be filed if Quicken Loans does not acquiesce to [the government's] demands" did Quicken conclude it "had no other option than to file this lawsuit" preemptively. *Id.* ¶¶ 6, 23. Quicken admits that it brought this suit anticipatorily "in the face of the DOJ and HUD-OIG's repeated threats of [a] . . . False Claims Act lawsuit." *Id.* ¶ 23.

Quicken's selection of the Eastern District of Michigan is transparently an attempt to secure its home turf, where it apparently believes it enjoys goodwill, as the forum for resolving the dispute over the Subject Loans. That motive explains

why Quicken's Complaint proclaims "Quicken Loans' leadership in the renewal of Detroit," offering the otherwise irrelevant assertions that "the vast majority of [its more than 11,000 employees] work out of rehabilitated office buildings in downtown Detroit" and "Quicken Loans has contributed to [renewing and revitalizing Detroit] by bringing over 10,000 full-time jobs to downtown Detroit, investing with its related companies over $1.7 billion into the City of Detroit, and has engaged in numerous civic and community projects and initiatives."  Compl. ¶¶ 7, 52, 53.  It comes as no surprise that, just six days after the United States filed its enforcement suit, Quicken filed a thirty-one page brief moving to stay the United States' suit or transfer it to this judicial district.

Quicken's tactical filing of this suit to attempt to secure its desired forum is improper and does not control.  "A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing."  *Zide Sport Shop of Ohio v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001).  "The question is not which party has chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first."  *AmSouth*, 386 F.3d at 789.  Quicken "can litigate the claims it makes in this declaratory judgment action in [the District of Columbia]; the claims in essence are affirmative defenses to the penalties [the United States] seeks to impose."  *Ford*,

30

2006 WL 2457521, at *9.  "Consequently, a decision in this declaratory judgment action would effectively deny [the United States] its legitimate choice of the forum for its coercive action."  *Id*.

This factor weighs heavily in Defendants' favor.  "The record reveals that [Quicken] filed this action in anticipation of [the United States'] pending [enforcement] litigation and sought a more favorable forum."  *Id*. at *8.  "Of all the factors to consider . . . the strength of this one alone warrants dismissal of the declaratory judgment action."  *Id*.

### D.  The United States' Enforcement Suit Offers a Superior Remedy.

As explained above, Quicken's requested declaratory relief would require this Court to undertake an individual review of each of nearly 250,000 loans.  By contrast, the United States' enforcement suit will require the government to prove that Quicken violated its legal and contractual obligations with respect to a subset of loans.  Accordingly, a better remedy exists there than in this unnecessarily cumbersome declaratory judgment action.

In sum, all four factors that apply here "weigh heavily in favor of declining jurisdiction over [this] declaratory action[], with no factors weighing in favor of proceeding with the declaratory-judgment action."  *AmSouth*, 386 F.3d at 791 (reversing court that "abused its discretion in entertaining [declaratory] actions").

31

## IV. This Court Lacks Jurisdiction to Resolve Quicken's Non-Breach of Contract Claim.

Pursuant to Rule 12(b)(1), the Court should dismiss Quicken's non-breach of contract claim because the Court lacks jurisdiction to consider it. It is well-settled that "the United States is protected by sovereign immunity and on this basis cannot be sued without its consent." *S. Rehab. Grp. v. Sec'y of Health & Human Servs.*, 732 F.3d 670, 676 (6th Cir. 2013). "Only Congress can waive immunity," and "waivers of federal sovereign immunity must be unequivocally expressed in the statutory text." *Id.* (quotation omitted).

Although it is Quicken's burden to identify a statute that waives the government's sovereign immunity for its non-breach of contract claim, it has failed to do so. Section 2 of the National Housing Act, 12 U.S.C. § 1702, is inapplicable because that provision is "a waiver of the immunity *of HUD only*," and is neither a grant of jurisdiction nor a waiver of immunity for the United States generally. *Johnson v. United States*, 502 F. App'x 412, 417 (5th Cir. 2012) (emphasis in original). Thus, to the extent that Quicken seeks to hold defendants the United States and DOJ liable for its non-breach of contract claim, the claim must be dismissed.[8] *See id.* (upholding district court's dismissal of National Housing Act

---

[8] Although Congress waived the federal government's immunity to certain contract claims in the Tucker Act, 28 U.S.C. § 1491, it did not waive immunity for

claim against United States because 12 U.S.C. § 1702 waives sovereign immunity for HUD only); *see also DSI Corp. v. Sec'y of Hous. & Urban Dev.*, 594 F.2d 177, 180 (9th Cir. 1979) (waiver of sovereign immunity set forth in the National Housing Act does not apply to a claim against the United States predicated on an alleged violation of contractual right).

Nor may Quicken rely on § 1702's waiver of sovereign immunity to support its non-breach of contract claim against defendants HUD and HUD-OIG. "As the language instructs, Section 1702 authorizes the Secretary to 'sue and be sued' when 'carrying out the provisions of'" specified portions of the NHA codified at 12 U.S.C., Chapter 13. *United Am., Inc. v. N.B.C.-U.S.A. Housing, Inc. Twenty Seven, et al.*, 400 F. Supp. 2d 59, 62 (D.D.C. 2005). Thus, Quicken Loans must demonstrate that the agency activity it challenges falls within the enumerated provisions set forth in "subchapter I or subchapters II, III, V, VI, VIII, IX-B, and X-B" to prove that jurisdiction exists. Quicken cannot meet this burden.

Quicken has not identified (nor can it) any *action of defendant HUD* that purportedly threatens the "[t]ens of thousands of [] contracts . . . created between

---

contract claims against the United States that seek equitable relief. *See A.E. Finley Assoc., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990) ("The Tucker Act generally applies only to actions against the United States for monetary damages.") Because Quicken Loans' non-breach of contract claim seeks only declaratory and injunctive relief, the waiver of sovereign immunity in the Tucker Act is inapplicable.

33

HUD and Quicken Loans" and falls within the scope of waiver set forth in § 1702. Compl., ¶107. Indeed, Quicken itself concedes that defendant HUD "suspend[ed]" its PETR and Quality Assurance Program reviews of the subject loans. *See id.* ¶ 71. This temporary suspension of activity is not a final agency action, and it cannot harm Quicken; instead, its only significance is that HUD will take no enforcement action against Quicken under these programs for the duration of the suspension. Moreover, the only agency action that Quicken purports to challenge, *i.e.*, the government's use of statistical sampling in its FCA investigation of the company, does not fall within the scope of the NHA. *See Ku v. U.S. Dep't of Hous. & Urban Dev.*, Civ. No. 11-CV-6858(VB), 2012 WL 2864509, at *2-*3 (S.D.N.Y. May 14, 2012) (holding that NHA does not waive sovereign immunity for claim outside the scope of §1702's waiver). Because Quicken is unable to identify any action that defendant HUD or HUD-OIG has taken that falls within the scope of the sovereign immunity waiver in § 1702, this claim must be dismissed for lack of jurisdiction. *See United American*, 400 F. Supp. 2d at 59-65.

## V. Quicken's Due Process Claim Fails as a Matter of Law.

To state a claim for violation of the Due Process Clause, Quicken must allege that the government deprived it of a cognizable property interest. *See Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). "'Property interests

are not defined by the Constitution.'" *Muslim Cmty. Ass'n of Ann Arbor & Vicinity v. Pittsfield Charter Twp.*, 947 F. Supp. 2d 752, 763 (E.D. Mich. 2013) (quoting *Taylor Acquisitions, LLC v. City of Taylor*, 313 F. App'x 826, 830 (6th Cir. 2009)). Rather, they are created by "'existing rules or understandings that stem from an independent source such as [federal] law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Med Corp.*, 296 F.3d at 409 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

In this case, Quicken's due process claim depends chiefly on its misguided view that a July 9, 2013 Notice published by HUD seeking public comment on the use of statistical sampling in its FHA Quality Assurance Program bars the government from using statistical sampling in proposing to settle its False Claims Act liability. *See* Compl. ¶ 114 ("Defendants' abandonment of the Loan-Level Mandate and stated intention to use Conjectural Extrapolation Sampling . . . after declaring in the [July 9, 2013] Solicitation for Comments that sampling would not be used, violates Quicken Loans' right to due process."). Quicken's reliance on the July 9, 2013 Notice is misplaced for two reasons.

First, the Notice does not control the government's conduct of False Claims Act enforcement. Rather, by its express terms, the Notice only proposes "ways to

improve the efficiency and effectiveness of FHA's quality assurance process ('QAP')," including through the use of statistical sampling. 78 Fed. Reg. 41,075-77 (July 9, 2013). The Notice does not purport to govern the government's ability to enforce the False Claims Act.

Second, even assuming that the Notice addressed False Claims Act enforcement (which it did not), the "Solicitation of Comments" (as Quicken itself describes the Notice) is merely that—a request for public comment on the possible use of statistical sampling in an FHA program. *See* 78 Fed. Reg. 41,075 (July 9, 2013) (requesting public comment from "[FHA] approved lenders, the lending industry generally, consumers, [and] consumer protection agencies, and interested members of the public on . . . whether to establish a process to review statistically significant random sample of loans for each mortgagee within a prescribed time frame after loan endorsement"). The Notice has no binding effect and therefore does not impose any enforceable obligation on the agency, the entities it regulates, or anyone else. *See United States v. Utesch*, 596 F.3d 302, 310 (6th Cir. 2010) (preliminary guidelines do "not carry the force of law" and were not binding on criminal defendant); *see also United States v. Springer*, 354 F.3d 772, 776 (8th Cir. 2004) ("[I]t is well-settled 'that proposed regulations have no legal effect.'") (quotation and alteration omitted).

36

The Notice's absence of binding (or legal) effect is fatal to Quicken's due process claim, because "[a] rule or regulation must have 'binding force' to create a constitutionally protected property right." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1347 (7th Cir. 1995). Because the Notice does not create a "binding obligation" on the part of any agency, Quicken's due process claim fails. *Id.* at 1348.

The Court also may readily dispense with Quicken's claim that the government's use of statistical sampling in exploring the settlement of False Claims Act liability somehow violates the company's due process rights. *See* Compl. ¶¶ 116-118. "[When a] statute or policy . . . grants[] the decisionmaker discretionary authority in [its] implement[ation], a protected property interest is not created." *Jennings v. Lombardi*, 70 F.3d 994, 996 (8th Cir. 1995). As explained above, the government's decision to offer to settle False Claims Act liability is a "paradigmatic instance of [the government] exercising its presumptively nonreviewable enforcement discretion." *Baltimore Gas & Elec. v. FERC*, 252 F.3d 456, 460 (D.C. Cir. 2001); *see also Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1030 (D.C. Cir. 2007); *Skinner*, 752 F. Supp. at 13. Because this decision is committed to agency discretion, Quicken cannot demonstrate the legitimate claim of entitlement necessary to prevail in its due process claim. *See Garcia v. McCarthy*, No. CIV. 13-CV-03939, 2014 WL 187386-WHO, at *15-*18

(N.D. Cal. Jan. 16, 2014) (dismissing due process challenge to agency's "investigation, negotiation, settlement, and resolution" of case).[9]

## VI.    The Court Should Transfer Any Claims That Are Not Dismissed.

If any of Quicken's claims survive dismissal, the Court should transfer them to the United States District Court for the District of Columbia (the "DDC") pursuant to 28 U.S.C. § 1404(a).[10] In that court, Quicken has taken the position, and the United States agrees, that this preemptive suit and the United States'

---

[9]      It is worth noting that, even if Quicken had pled a cognizable property interest here (which it has not), no deprivation will ultimately occur without due process. The government's enforcement action provides the process through which Quicken may present its defenses to the government's claims prior to any deprivation of a protected property interest. That opportunity satisfies the principle that "when interests protected by procedural due process are implicated, 'some kind of hearing is required at some time before a person is *finally deprived*' of those interests." *Wilson v. Beebe*, 770 F.2d 578, 595 (6th Cir. 1985) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). "It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." *Ewing*, 339 U.S. at 599.

[10]     Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). As the United States explained in its brief opposing Quicken's motion to transfer the government's action to this Court, this case could have been brought in the District of Columbia where the actions challenged by Quicken—DOJ's deliberations whether to pursue an enforcement suit and HUD's decision to cease loan reviews—occurred and where the high-ranking officials sued by Quicken reside. 28 U.S.C. § 1391(e)(1). *See generally* United States' Resp. to the Court's Order to Show Cause & Mem. of P. & A. in Opp'n to Quicken Loans Inc.'s Mot. to Stay or Transfer, No. 1:15-cv-613-RBW (D.D.C.), ECF No. 12.

enforcement suit should not progress simultaneously in two separate courts.  *See United States of America v. Quicken Loans, Inc.*, No. 1:15-cv-613-RBW (D.D.C.), ECF No. 4 ("Quicken DDC Mot. to Stay or Transfer") at 10 ("It is beyond genuine dispute that the Detroit Act and this one involve the same parties (the United States and Quicken Loans), overlap substantially as to both facts and issues, and therefore should not proceed simultaneously in two separate federal district courts.").

As this Court has recognized, parallel actions should be consolidated "to avoid 'wastefulness of time, energy and money,' and to avoid 'a race of diligence among litigants for a trial in the District Court each prefers.'"  *Carson Real Estate Companies, LLC v. Constar Grp., Inc.*, Civ. A. No. 10-cv-13966 (MAG), 2011 WL 4360017, at *9 (E.D. Mich. Sept. 19, 2011) (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).  Therefore, if this Court does not summarily dismiss this case, the government respectfully requests that the Court consolidate any remaining claims with the affirmative claims brought by the United States against Quicken in the District of Columbia.

Although courts typically consolidate overlapping actions in the court where suit was filed first, Quicken's preemptive suit does not trigger the "first-filed" rule. "[T]he first-filed rule is not a strict rule and much more often gives way in the context of a coercive action filed subsequent to a declaratory action."  *AmSouth*,

39

386 F.3d at 791 n.8; *accord Zide*, 16 F. App'x at 437 ("District courts have the discretion to dispense with the first-to-file rule where equity so demands.").

This Court and others have transferred suits seeking declaratory relief to the venue of the later-filed coercive suit. *See Carson Real Estate*, 2011 WL 4360017, at *9 (transferring declaratory action in deference to parallel proceeding); *Flintkote Co. v. Aviva P.L.C.*, Civ. A. No. 13-cv-0103-LPS, 2015 WL 1405922, at *5 (D. Del. Mar. 25, 2015) (transferring preemptive declaratory action to natural plaintiff's chosen forum); *T2 Prods., LLC v. Advantus Corp.*, Civ. A. No. 3:14-CV-00193-GCM, 2014 WL 4181932, at *4 (W.D.N.C. Aug. 21, 2014) (same).[11]

Accordingly, should this Court decline to dismiss this case in its entirety, it should transfer any remaining portion to the U.S. District Court for the District of Columbia, for consolidation with the government's enforcement suit pending there.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Quicken Loans' claims in their entirety, with prejudice. To the extent that any of Quicken Loans' claims survive dismissal, Defendants respectfully request transfer to the United States District Court for the District of Columbia.

---

[11] The government requests an opportunity for supplemental briefing if the Court wishes a more comprehensive analysis of how the factors under 28 U.S.C. § 1404(a) favor transfer of this suit to the District of Columbia.

Dated: May 27, 2015          Respectfully submitted,

U.S. DEPARTMENT OF JUSTICE

LOCAL COUNSEL          BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

BARBARA L. MCQUADE
United States Attorney         LESLEY FARBY
Assistant Branch Director

PETER A. CAPLAN
Assistant U.S. Attorney         */s/ Tamra T. Moore*
211 W. Fort Street, Ste. 2001    TAMRA T. MOORE
Detroit, MI 48226          ARJUN GARG
(313) 226-9784           Trial Attorneys
P30643               U.S. Department of Justice
Email: peter.caplan@usdoj.gov   Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Telephone: (202) 514-8095
Facsimile: (202) 616-8460
Emails: tamra.moore@usdoj.gov
          arjun.garg@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2015, I electronically filed the foregoing document using the Court's CM/ECF System, which will send notice of this filing to all counsel of record.

                                     */s/ Tamra T. Moore*
                                     TAMRA T. MOORE