# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
UNITED STATES OF AMERICA,           )
                                                              )
       Plaintiff,                              )
                                                              )
   v.                                                        )   Civil Action No. 15-613 (RBW)
                                                              )
QUICKEN LOANS INC.,                          )
                                                              )
       Defendant.                            )
_____)

## MEMORANDUM OPINION

The government initiated this action against Quicken Loans Inc. ("Quicken") pursuant to the False Claims Act, 31 U.S.C. §§ 3729–3733 (2012), Complaint ("Compl.") ¶ 1, alleging asserts that, between September 1, 2007, and December 31, 2011, Quicken "knowingly approved loans that violated FHA [Fair Housing Act] rules while falsely certifying compliance with those rules," id., which permitted Quicken "to profit from these loans, even if borrowers defaulted on their mortgages, while placing all of the risk" on the federal government, id. ¶ 2. Currently before the Court is Quicken Loans Inc.'s Renewed Motion to Transfer this Action to the United States District Court for the Eastern District of Michigan ("Def.'s Mot."). After careful consideration of the parties' submissions, the Court concludes that it must grant Quicken's motion, and transfer this case to the United States District Court for the Eastern District of Michigan.[1]

---

[1] In addition to Quicken Loans Inc.'s Renewed Motion to Transfer this Action to the United States District Court for the Eastern District of Michigan, the Court considered the following submissions in rendering its decision: (1) Quicken Loans' Memorandum in Support of its Renewed Motion to Transfer this Action to the United States District Court for the Eastern District of Michigan ("Def.'s Mem."); (2) the United States' Memorandum of Points and Authorities in Opposition to Quicken Loans' Renewed Motion to Transfer ("Gov't Opp'n"); and (3) the Reply Memorandum in Support of Quicken Loans' Renewed Motion to Transfer this Action to the United States District Court for the Eastern District of Michigan ("Def.'s Reply").

## I.     BACKGROUND

In April 2012, the government initiated an investigation into Quicken's origination and underwriting of single family residential mortgages insured by the FHA. Gov't Opp'n, Exhibit ("Ex.") 1 (Declaration of Christopher Reimer of May 14, 2015 ("Reimer Decl.")) ¶ 6. After unsuccessful settlement negotiations, the government informed Quicken on March 30, 2015, that it intended to file this suit during the week of April 20, 2015, id. ¶ 10, and this action was filed on April 23, 2015, see Compl.

On April 17, 2015, six days prior to the filing of the Complaint in this matter, Quicken filed an Administrative Procedure Act ("APA") claim against the government in the United States District Court for the Eastern District of Michigan. Gov't Opp'n, Ex. 3 (Complaint ("APA Compl.")) at 1. On April 29, 2015, Quicken filed in this matter a Motion to Stay or Transfer in Light of a First-Filed Action Pending in the Eastern District of Michigan. Defendant Quicken Loans Inc.'s Motion to Stay or Transfer in Light of a First-Filed Action Pending in the Eastern District of Michigan ("Def.'s Mot. to Stay or Transfer"), ECF No. 4. On May 29, 2015, this Court stayed the proceedings in this case pending the resolution of the government's motion to dismiss the Michigan APA case, Order, ECF No. 18, and the APA case was thereafter dismissed with prejudice on December 31, 2015. See Quicken Loans Inc. v. United States, 152 F. Supp. 3d 938, 955 (E.D. Mich. 2015), appeal docketed, No. 16-1250 (6th Cir. March 2, 2016).

On January 19, 2016, the Court denied without prejudice Quicken's Motion to Stay or Transfer, "with permission to file a revised motion seeking such relief that reflects these developments in the Eastern District of Michigan." Minute Order, Jan. 19, 2016. On February 19, 2016, Quicken filed its Renewed Motion to Transfer this Action to the United States District Court for the Eastern District of Michigan. Def.'s Mot. at 1.

2

## II. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (2012). The decision to transfer a case is discretionary, and a district court must conduct "an individualized, 'factually analytical, case-by-case determination of convenience and fairness.'" New Hope Power Co. v. U.S. Army Corps of Eng'rs, 724 F. Supp. 90, 94 (D.D.C. 2010) (quoting SEC v. Savoy Indus. Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978)).

As a threshold matter, a district court must determine that the proposed transferee court is located "in a district where the action 'might have been brought.'" Fed. Housing Fin. Agency v. First Tenn. Nat'l Bank, 856 F. Supp. 2d 186, 190 (D.D.C. 2012) (Walton, J.). If so, then a district court

> considers both the private interests of the parties and the public interests of the courts[.] The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . . , but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

Shapiro, Lifschitz & Schram, P.C. v. Hazard, 24 F. Supp. 2d 66, 71 (D.D.C. 1998) (citation omitted).

## III. ANALYSIS

There is no dispute that the current action could have been brought in the Eastern District of Michigan, see 31 U.S.C. § 3732(a) (stating that the government may file a False Claims Act

suit in any district in which the defendant "can be found, resides, transacts business, or in which any act proscribed by [§] 3729 occurred"); accordingly, the Court turns to an analysis of the private and public interest factors.

### A.   The Private Interest Factors

#### 1.   The Parties' Choice of Forum and Where the Claims Arose

Generally, the party moving for a transfer of venue "bears a heavy burden of establishing that [the] plaintiffs' choice of forum is inappropriate" because the plaintiff's choice of forum is entitled to substantial deference. Thayer/Patricof Educ. Funding, LLC v. Pryor Resources, Inc., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (citations and internal quotation marks omitted). This deference, however "is 'greatly diminished when the activities have little, if any, connection with the chosen forum.'" McClamrock v. Eli Lilly & Co., 267 F. Supp. 2d 33, 36 (D.D.C. 2003) (Walton, J.).

Quicken argues that the District of Columbia's connection to this case is insubstantial, and the government's choice of forum should be accorded no deference. Def.'s Mem. at 8. To the extent that Quicken's endorsement of FHA loans and submission of insurance claims to the government were processed by the government in the District, Quicken notes that these documents were submitted electronically and processed automatically, id. at 9 (citing Compl. ¶¶ 40, 93–95, 98), and "[t]hus the automated processing by the FHA's electronic systems creates no significant connection for purposes of § 1404(a)," id. at 9–10. Furthermore, Quicken argues that the Eastern District of Michigan is the more appropriate venue because "Quicken Loans is incorporated in Michigan; has its headquarters in the Eastern District of Michigan; transacts business in the Eastern District of Michigan; and underwrote, endorsed, and certified the loans in question in the Eastern District of Michigan." Id. at 7.  According to Quicken, "all of the facts

4

that the United States alleges gave rise to its claims occurred in Michigan," including: the underwriting of the loans in question; the alleged false certifications that the loans complied with FHA guidelines; the allegedly false annual certifications of FHA compliance; the approval of exceptions to lending guidelines; the alleged "value appeals" to obtain inflated appraisals; the alleged manipulation and miscalculation of borrower income; the compensation of the underwriters; the alleged manipulation of borrower data; the alleged failure to perform quality control and report compliance failures to FHA; and the writing of numerous emails and documents cited in the Complaint.  Id. at 12–13 (citing Compl. ¶¶ 103–201).

      The government responds that it chose to file this matter in the District of Columbia due to the "intimate involvement of FHA and HUD [United States Department of Housing and Urban Development] employees and officials in this district." Gov't Opp'n at 11.  According to the government, the claims arose in this federal district, not in the Eastern District of Michigan, because "the most significant events occurred here—namely, false statements made by Quicken Loans to HUD and FHA personnel in the District of Columbia." Id. at 26.  The government argues that the allegedly false certifications made by Quicken, as well as the FHA loan payments that followed from those certifications, were submitted and processed through systems administered by FHA staff in this district. Id. at 13–15.  Moreover, the government claims that its policies for underwriting and endorsing FHA loans, including the loans at issue, were generated and reviewed by government officials in this District. Id. at 16–19. Furthermore, the government argues that Quicken's preferred venue should be afforded no weight because Quicken "engaged in improper forum shopping by filing its preemptive action." Gov't Opp'n at 26. According to the government, the "failed [Michigan] suit, and the delay and inconvenience

that it caused, should be treated by the [C]ourt as a factor that weighs against a transfer of this action." Id.

The Court concludes that the government's choice of forum in this matter is entitled to little deference because there is an insubstantial nexus between District of Columbia and the factual circumstances underlying the government's False Claims Act allegations. See New Hope Power Co., 724 F. Supp. 2d at 95. The only connection with the District of Columbia is that FHA and other government employees in this district received the allegedly false statements and claims made by Quicken, which were submitted and processed through systems administered by FHA staff in this district. Gov't Opp'n at 11–26. The Court has previously rejected such arguments, explaining that "[m]ere involvement . . . on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative of whether the plaintiffs' choice of forum [in the District of Columbia] receives deference." Fed. Housing Fin. Agency, 856 F. Supp. 2d at 192. The government's receipt and processing of the documents it relies upon as grounds for this case being adjudicated in the District of Columbia do not support the government's position; rather, the most significant events underlying the claims outlined in the Complaint occurred in the Eastern District of Michigan, where the relevant decisions were made to approve and underwrite the loans at issue. See Compl. ¶¶ 98–108. Although the government is correct that it authored the applicable FHA policies and guidelines, and received Quicken's FHA submissions, in the District through systems monitored by employees located in the District, it is doubtful that the issuance of such policies or the receipt of such submissions will be the main focus of the dispute; rather, it is the decisions that Quicken employees made in the Eastern District of Michigan that are at issue in this False Claims Act matter. See McClamrock, 267 F. Supp. at 38 (concluding that the plaintiff had not demonstrated how the

6

conduct of government officials would be relevant to proving his claims, and thus there was no reason for the action to remain in the District of Columbia). Accordingly, because "the majority of the events that give rise to the claim" took place in the Eastern District of Michigan, this factor weighs in favor of transfer. See Southern Utah Wilderness All. v. Lewis, 845 F. Supp. 2d 231, 236 (D.D.C. 2012).

The Court disagrees with the government that Quicken's failed preemptive suit warrants denial of its motion to transfer. See Gov't Opp'n at 6. The cases cited by the government in support of this contention, see id. at 6–8, are distinguishable from the facts in this matter, as all but two of those cases involved parallel preemptive suits that were still ongoing at the time the motions to transfer venue were denied; thus, the parties that filed the preemptive suits would have been rewarded for their earlier-filed preemptive suits if their motions for transfer had been granted. See EEOC v. Univ. of Pa., 850 F.2d 969, 976–77 (3d Cir. 1988) (holding that a district court in the Eastern District of Pennsylvania did not abuse its discretion by failing to dismiss a second-filed action pursuant to the first-filed rule given "the totality of the circumstances," specifically that "[t]he timing of the [first-filed action] in the District of Columbia indicates an attempt to preempt an imminent subpoena enforcement in the Eastern District of Pennsylvania"); Spanx, Inc. v. Times Three Clothier, LLC, 2013 WL 5636684, at *1, 4 (N.D. Ga. 2013) (granting the defendant's motion to transfer to the Southern District of New York a declaratory judgment action that the plaintiff filed in the Northern District of Georgia before the defendant filed its patent infringement action in the Southern District of New York because the plaintiff's choice of forum for her "anticipatory" action was not entitled to any deference); Michael Miller Fabrics, LLC v. Studio Imports Ltd., 2012 WL 2065294, at *1, 5, 7 (S.D.N.Y. 2012) (granting the plaintiff's motion for an injunction to restrain the defendant from prosecuting its declaratory

judgment action filed in the Southern District of Florida because "the declaratory judgment action was anticipatorily filed in response to a notice letter from [the plaintiff]"). In one of the other cases cited by the government, Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973 (7th Cir. 2010), neither party filed a preemptive suit at all; rather, the parties "filed mirror-image lawsuits in two different district courts, each claiming the other had breached their contract." Id. at 975. Finally, in the last case cited by the government, Newmont USA Ltd. v. American Home Assurance Co., 2009 WL 1764517 (E.D. Wash. 2009), the court's principal reason for denying transfer of venue was the transferee court's lack of personal jurisdiction over one of the defendants, not the preemptive action. See id. at 5–6 (noting that neither of the two § 1404(a) requirements—the convenience of the parties and the fact that the matter could have been brought in the transferee forum—had been met, "given the lack of jurisdiction over [one of the plaintiffs] in New York courts"). Here, the parallel preemptive suit has already been dismissed, see Quicken Loans Inc., 152 F. Supp. 3d at 955, and thus is not a factor in this Court's analysis regarding the balance of convenience. Accordingly, the location where the claims arose outweighs the government's choice of forum and therefore weighs in favor of transferring this case to this Eastern District of Michigan.

### 2. The Convenience of the Parties and Witnesses and the Ease of Access to Sources of Proof

Quicken argues that the Eastern District of Michigan is the more convenient forum because all of the Quicken employees identified in the Complaint, "nearly all" of the rest of Quicken employees who may be called as witnesses, and all of Quicken's loan files and other relevant documents, are located there. Def.'s Mem. at 14. According to Quicken, although some government witnesses may be located in the District of Columbia, others may be located at HUD's Homeownership Centers in Pennsylvania, California, Colorado, and Georgia. Id. at 14–

15. Quicken also argues that the non-party witnesses, such as the appraisers and borrowers, "are far more likely to be located near Detroit than D.C." Id. at 17–18.

The government responds that the District of Columbia is the most convenient forum for the United States because nearly all of its witnesses are located in the District of Columbia. Gov't Opp'n at 27. The government agrees that the HUD Homeownership Center employees may appear as witnesses, but notes that the Philadelphia Homeownership Center, which is responsible for Quicken's principal lending region, is much closer to the District of Columbia than to the Eastern District of Michigan, and thus this District would be more convenient for those witnesses. Id. at 21. As for non-party witnesses, the government argues that because Quicken "is a national mortgage lender with a broad national reach," this case will involve witnesses "such as borrowers, appraisers, and other persons relevant to specific loans" from across the nation, and the Eastern District of Michigan will not be more convenient to those witnesses than this District. Id. at 30–31. Finally, the government claims that because Quicken's files "are nearly all electronic," this factor is less important because electronic documents can easily be "transported" to this District. Id. at 32.

Because a number of parties and witnesses in this dispute are located in both this District and the Eastern District of Michigan, and the majority if not all of the documents are electronic, the Court concludes that these factors are neutral. See Thayer/Patricof Educ. Funding, L.L.C., 196 F. Supp. 2d at 36 (stating that "the location of documents, given modern technology, is less important in determining the convenience of the parties"); Shapiro, Lifschitz & Schram, P.C., 24 F. Supp. 2d at 72 (concluding that "the 'convenience of the parties' factor does not favor either side—both would face significant inconvenience if the case were tried in the competing forum").

9

**B.    Public Interest Factors**

Because the parties agree that the first public interest factor, the transferee's familiarity with the governing law, is neutral, see Def.'s Mem. at 23; Gov't Opp'n at 34; see also Fed. Housing Fin. Agency, 856 F. Supp. 2d at 194 ("[A]ll federal courts are presumed to be equally familiar with the law governing federal statutory claims."), the Court need only assess the following two public interest factors, see Shapiro, Lifschitz & Schram, P.C., 24 F. Supp. 2d at 71 (listing the public interest factors for a court to consider under § 1404(a)).

**1.    The Relative Congestion of the Transferee and Transferor Courts**

"'In this District, potential speed of resolution is examined by comparing the median filing times to disposition in the courts at issue.'" Fed. Housing Fin. Agency, 856 F. Supp. 2d at 194 (quoting Spaeth v. Mich. State Univ. Coll. of Law, 845 F. Supp. 2d 48, 60 (D.D.C. 2012)). According to the latest statistics concerning federal judicial caseloads, the median filing-to-disposition period in this District was 8.0 months, compared to 11.7 months in the Eastern District of Michigan. U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics at 2, 40 (June 30, 2016), available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-1. Thus, the relative congestion of the Eastern District of Michigan weighs against transfer to that court, "but not by much." See, e.g., Fed. Housing Fin. Agency, 856 F. Supp. 2d at 194 (concluding that a median filing-to-disposition period of 7.2 months in the District of Columbia slightly weighed against transfer to the Southern District of New York, where filing-to-disposition periods ranged from 6.4 to 9.8 months).

### 2.     The Local Interest in Deciding Local Controversies at Home

Quicken argues that because the conduct at issue occurred in the Eastern District of Michigan, that District "has a substantial interest in adjudicating a controversy that arose there and that concerns disputes between a large Michigan company and the federal government." Def.'s Mem. at 20 (footnote omitted). The government responds that this case is not a local controversy at all, but "involves the issuance and endorsement of mortgages for properties across the country that adversely affects taxpayers throughout the nation." Gov't Opp'n at 35. While the Court agrees that the case has national implications, the Court also agrees with Quicken that there is a stronger local interest in this matter in the Eastern District of Michigan, where "Quicken Loans underwrote the FHA loans at issue, endorsed those loans, and certified its compliance as to those loans." Def.'s Mem. at 4, 12–13. Accordingly, this factor weighs in favor of Quicken.

### CONCLUSION

The Court concludes that the balance of factors outlined in § 1404(a) weighs in favor of Quicken's position, and therefore the Eastern District of Michigan is the appropriate forum for the adjudication of this case in light of its more substantial nexus to the factual circumstances of this case. Although the convenience and governing law factors are neutral, and the relative congestion factor weighs slightly against transfer, the parties' choices of forum, where the claims arose, and the local interest in deciding local controversies in the jurisdiction where they arose weigh in favor of transferring this case to the Eastern District of Michigan because the alleged unlawful activity occurred in or near Detroit. Accordingly, the Court grants Quicken's motion to transfer this case to the United States District Court for the Eastern District of Michigan.

**SO ORDERED** this 14th day of November, 2016.

                                                REGGIE B. WALTON
                                                United States District Judge